D. H. COLLINS v. UNITED STATES CASUALTY COMPANY.

(Filed 22 November, 1916.)

**1. Evidence—Nonsuit.**

In an action to enforce payment on a policy of health insurance, defended by the company for alleged fraud and misrepresentations made by the insured, the evidence upon defendant's motion to nonsuit must be construed favorably in behalf of the plaintiff, and, so construed, there being sufficient evidence to sustain his contention, the motion was properly disallowed.

**2. Insurance, Health—Reservations—Instructions.**

Where a policy of health and accident insurance sued on contains a provision that it does not cover loss or sickness or disease existing, or contracted prior to its issuance, etc., a charge to the jury that they should answer an appropriate issue in the defendant's favor should they find from the evidence that the loss resulted from sickness or disease which existed before the policy was issued, or which was contracted before that time, is a proper one, and in this case held preferable to the instruction requested by the defendant.

**3. Same—Burden of Proof.**

Where a health and accident policy insures, among other things, against loss resulting from sickness or disease, with additional provision that it does not cover such as existed prior to the issue of the policy, the insured, in his action thereon, makes out a prima facie case when he introduces the policy in evidence and proves that he was sick and confined to a hospital with the kind of sickness or disease covered by its terms, and the burden of proof is on the defendant to show that such was contracted prior to its issue, this being, under the language of this policy, in the nature of an exemption to the company's liability from the general terms of its contract.

**4. Insurance—Principal, and Agent—Application—Misrepresentations—Good Faith.**

> Where the agent of the insurer fills out the application for a policy, and is given full information by the applicant as to prior sickness and disease which would invalidate the policy, but the agent misrepresents the facts in writing the answers, and the policy is accordingly issued; and the insured, acting in good faith, has been induced by the conduct of the agent to sign the application without reading it or becoming aware of the misrepresentations, and has paid the premiums thereon: *Held*, the acts of the agent in writing the answers are within the scope and purview of his agency for the company, and it is bound by his conduct in misleading the applicant.

**5. Insurance—Policies—Interpretation.**

> The written terms of a policy of insurance which are of doubtful meaning are construed in favor of the insured.

**6. Verdicts—Weight of Evidence—Trials—Court's Discretion—Appeal and Error.**

> A motion to set aside a verdict as being against the weight of the evidence is addressed to the sound discretion of the trial judge, and not reviewable on appeal.

CIVIL ACTION tried before *Cline, J.,* and a jury at May Term, 1916, of GUILFORD.

The action is based upon a policy of insurance issued by the defendant to the plaintiff in May, 1915, and which was in force on and after the 24th of that month. The policy insured the plaintiff to the amount of $5,000 as follows: "Subject to its terms, this policy indemnifies for loss of time, of sight, of limb, and of life from accident, and for loss of time, of sight, and use of limb from sickness, David Harley Collins, of Greensboro, North Carolina, by occupation a justice of the peace and United States Commissioner, herein called the insured, for three months, beginning at noon, standard eastern time on 24 May, 1915, subject to the provisions and conditions and limits herein against loss resulting directly and independently of any and all other causes from bodily injury effected solely through external, violent, and accidental means, herein called such injury, and against loss resulting from sickness or disease, herein called such sickness." Then follows a description of the different kinds of insurance and the indemnities therefor, according to the nature and extent of the injuries and the consequent losses. Under the headline of "Additional Provisions" is this clause: "This policy does not extend to, nor cover, . . . loss caused by any sickness or disease existing or contracted prior to the issue of this policy, nor loss caused by any sickness or disease, unless disability resulting therefrom begins while this policy is in force."

The jury returned the following verdict:

1. Did D. H. Collins, insured, in his application for insurance represent that.he had not consulted a physician or taken treatment during the two years immediately preceding the date of the application, except Dr. Jarboe in January, 1914, over one year prior to the date of the application? Answer: "No."

2. Had D. H. Collins, insured, consulted a physician or taken treatment during the two years immediately preceding the date of the application, otherwise than Dr. Jarboe in January, 1914? Answer: "Yes."

3. If so, did the said D. H. Collins fully and fairly disclose all the facts in regard thereto to the defendant at the time the application was made? Answer: "Yes."

4. Did D. H. Collins, insured, in his application for insurance, represent that he had not had any disease or accidental injury during the seven years immediately preceding his application for insurance except muscular rheumatism in January, 1914, and then ten days in the hospital? Answer: "No."

5. Had said D. H. Collins, insured, had any disease or accidental injury during the seven years preceding the date of his application for the insurance herein sued on except muscular rheumatism, and that in January, 1914, and then ten days in the hospital? Answer: "Yes."

6. If so, were the facts in regard thereto fully and fairly disclosed and made known to the defendant at the time the application was made? Answer: "Yes."

7. Did D. H. Collins, insured, in his application for insurance, represent that he had never had any application for accident or health or sickness or benefit or life insurance declined or acceptance postponed, and that no company or association or order had ever canceled or refused to renew a policy or certificate for him? Answer: "Yes."

8. Had D. H. Collins had any application for accident or health or sickness or benefit or life insurance declined or acceptance postponed, or had any company or association or order ever canceled or refused to renew a policy or certificate of insurance for him? Answer: "No."

9. Was the loss complained of by the plaintiff caused by sickness or disease existing or contracted prior to the issuing of the policy sued on? Answer: "No."

10. In what amount, if anything, is the defendant indebted to the plaintiff? Answer: "$350."

Defendant, at the close of the evidence, moved for a nonsuit upon the evidence, which motion was refused, and it then requested an instruction that if the jury believe the evidence, they should answer the

ninth issue "Yes"; this also was refused. Defendant excepted to these refusals and further excepted to the following instruction of the court to the jury on the ninth issue: "The burden of this issue is upon the defendant insurance company. It must establish by the greater weight of the evidence that the loss complained of was caused by sickness or disease existing or contracted prior to the issuing of the policy."

The defendant further excepted to the refusal of the court to set aside the verdict because it was against the weight of the evidence.

Judgment upon the verdict was rendered, and defendant appealed.

*R. C. Strudwick, Justice & Broadhurst for plaintiff.*
*Brooks, Sapp & Williams for defendant.*

WALKER, J., after stating the case: The motion for a nonsuit on the evidence was properly denied. There was evidence in the case upon which the jury could return a verdict for the plaintiff, as the evidence, upon such a motion, must be construed most favorably in behalf of the plaintiff, and if in any reasonable view of it he is entitled to recover, it should be submitted to the jury, and they have found that there was no fraud or misrepresentation on the part of the plaintiff. *Brittain v. Westhall,* 135 N. C., 492; *Shaw v. Public Service Corporation,* 168 N. C., 611; *Clark v. Whitehurst,* 171 N. C., 1.

The court told the jury that should they find from the evidence that the loss resulted from sickness or disease which existed before the policy was issued, or which was contracted before that time, their answer to the ninth issue would be "Yes." This was fully responsive to defendant's special prayer for an instruction upon the ninth issue, and was really a more preferable form of instruction than the one which was asked to be given. While we have not rejected the form of instruction which appears in the defendant's prayer, where there is no prejudice from it, we have yet commended the other form as the more desirable one. *Merrell v. Dudley,* 139 N. C., 57; *Sossamon v. Cruse,* 133 N. C., 470; *Alexander v. Statesville,* 165 N. C., 527.

The third assignment of error, as to the burden of proof upon the ninth issue, is untenable. The court properly instructed the jury that the burden was upon the defendant, and for this reason: The policy insured against "loss resulting from sickness or disease," and the plaintiff made out a prima facie case when he exhibited the policy and proved that he was sick and confined to the hospital and his home by such illness after the insurance was taken out. The clause of the policy withdrawing from its operation what would otherwise be embraced by it is in the nature of an exception, or an exemption of the company, under the specified circumstances, from liability thereon, and

if the company would avail itself of the exemption, it must establish the facts which bring the case within the same. "Plaintiff, to establish a prima facie case, must prove: (1) The existence of the contract or policy sued on; (2) the death of the insured or the happening of the event provided for in the policy, and the giving of notice and proof of death (or other event), as required by the policy. On the other hand, the burden is on the company to show a violation of conditions avoiding an otherwise valid policy, or exceptions in the policy which limit the liability of the company." 25 Cyc., 926; *Int. Order of Twelve v. Boswell,* 48 S. W., 1108; 9 Cyc., 762. The burden was on the plaintiff to show a case within the terms of the policy which entitled him to its protection and benefit; but he did this by the proof that he became ill after the policy was issued, and went to the hospital for an operation, and there is evidence that while he was there the second premium due on the policy was paid by him and received by the defendant. The policy is broadly worded, covering all cases of sickness, and if there was any special kind of illness which was excepted from the general words, the defendant should have shown it.

There was proof that the defendant's agent knew that plaintiff had been ill some time prior to the date of the policy, as it appears, by construing the evidence most favorably for plaintiff as against a motion to nonsuit, that the plaintiff stated frankly and fully to the agent, at the time of the application for the insurance, in answer to questions propounded to him, every fact in regard to previous illness, giving all the information in connection therewith. If the agent, by inadvertence or otherwise, failed to insert the answers in the application as they were given to him, it was not the fault of the plaintiff, but of the defendant's agent who represented it in the transaction. If it be said that the plaintiff was negligent in not reading the application before he signed it, the answer is that there is, at least, some evidence to the effect that plaintiff was induced not to do so by what the agent said to him, and upon a motion to nonsuit we must take this evidence to be true; and, in this view, it is not necessary to decide the interesting question whether, if plaintiff had not thus been misled by the agent, which excused him from reading the policy, his omission to read could be imputed to him as negligence which would exonerate the company or whether knowledge of the agent acquired even in this way would still be charged to the company. The authorities are not at one in regard to this proposition. Some cases hold that where the applicant is not, by the conduct of the agent, excused from reading the policy, but is negligent in not doing so, the company is not liable. *Ryan v. W. M. L. Ins. Co.,* 41 Conn., 168 (19 Am. Rep., 490); *N. Y. Life Ins.*

*Co. v. Fletcher,* 117 U. S., 519. Other authorities hold the contrary. 25 Cyc., 803 (d), 804, 805. It is there said: "Misstatements by way of representation or warranty which are made through the fraud of the company's agent cannot be relied on by it to defeat the policy; and especially is this so where the insured is misled by the agent into making the false statements. But the insured must act in good faith, and if by collusion between him and the agent false statements are made for the purpose of securing the insurance, he cannot recover, notwithstanding the agent's participation in the fraud. An insurance company cannot dispute the truthfulness of false statements written in the application for insurance by its agent without fraud or collusion on the part of the applicant, where the applicant made truthful answers to the agent, even though such statements are expressly made warranties on the basis of which the policy is issued. The theory on which the falsity of answers written in the application by the agent is charged to the company, and not to the insured, is that the agent represents the company in filling out or assisting to fill out the application, and this has been held to be so in some jurisdictions, notwithstanding any stipulation in the application that the agent in taking the application is to be considered the agent of the applicant." Numerous cases are cited in the note to sustain the text. *Otte v. Hartford L. Ins. Co.,* 88 Minn., 423; *McArthur v. H. L. Assn.,* 73 Iowa, 336; *Foster v. Mut. Ins. Assn.,* 37 Wash., 288; *Mass. L. Ins. Co. v. Esleman,* 30 Ohio St., 647; *Keystone Mut. Ben. Assn. v. Jones,* 72 Md., 363; *Marer v. Fed. Mut. L. Assn.,* 78 Fed., 566 (24 C. C. A., 239); *Hook v. M. M. L. Ins. Co.,* 90 N. Y. Suppl., 56; *C. M. I. L. Assn. v. Parham,* 80 Texas, 518; *Ins. Co. v. Wilkinson,* 13 Wall. (80 U. S.), 222; *Ins. Co. v. Malone,* 21 Wall. (88 U. S.), 152. See, also, as bearing upon the same question, *Follette v. Accident Assn.,* 110 N. C., 377; *Sprinkle v. Indemnity Co.,* 124 N. C., 405; *Gwaltney v. Assur. Society,* 132 N. C., 925; *Fishblate v. Fidelity Co.,* 140 N. C., 589.

But we need not decide this question, as we have held that there was proof of circumstances in this case which exempted the plaintiff from the operation of the principle, as stated and applied in *Ryan v. Ins. Co., supra,* and *Ins. Co. v. Fletcher, supra.* The conversation plaintiff had with the agent, as detailed by him, was calculated to throw him off his guard and to justify his placing trust and confidence in the agent's proper discharge of his plain duty, which he owed to him and the company, to write the answers correctly in the application. This prevented the plaintiff from reading the policy, which would have disclosed the errors to him; but the company, in such a case, must be bound by the acts of its agent within the principle stated in *Griffin v.*

*Lumber Co.,* 140 N. C., 514, and *Keystone Mut. Ben. Assn. v. Jones,* 72 Md., 363. As against a nonsuit, as we have already said, we must assume the truth of plaintiff's testimony as to what passed between him and the agent, and that the jury would have found that plaintiff was misled thereby and was not guilty of any negligence when he trusted the agent, and believed that he had written the answers as they had been given to him. This phase of the case does not seem to be discussed in the defendant's brief, but is embraced, perhaps, by the motion to·nonsuit, and we have, therefore, referred to it.

We have construed any doubtful meaning of the policy in favor of plaintiff, according to the settled rule. *Bray v. Ins. Co.,* 139 N. C., 390.

The refusal to set aside the verdict because it is against the weight of the testimony is not reviewable here.

We have found no error in any of the particulars to which exception was taken.

No error.