ROSE GOLDFEDER, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

City Court of New York, Bronx County, June 5, 1935.

*Louis Dickstein*, for the plaintiff.

*Tanner, Sillcocks & Friend* [*William B. Moore* of counsel], for the defendant.

ADLERMAN, J. This action is brought to recover the sum of $2,000, representing double indemnity benefits under a policy of life

insurance issued by the defendant on February 4, 1921, to one Abraham Goldfeder, in which the insured named his mother as beneficiary. The provision in said policy relating to the payment of double indemnity is as follows: " The indemnity provided for herein shall be payable only if the death of the insured result in consequence of bodily injury effected solely through external, violent and accidental means, within sixty days after such injury, independently and exclusively of all other causes."

At the trial of this action it was proved that on June 10, 1933, the assured died as a result of gunshot wounds and a fracture of the skull not self-inflicted, and that due proof of loss was given by the plaintiff to the defendant. While there are no cases in this jurisdiction with reference to the proof of accidental death where violent and external means are shown, except in those cases involving suicide, the law in the Federal jurisdiction and in the jurisdiction of most of the States of the United States is that where death by violent, external means is established, *prima facie* proof is thereby made of the fact that the injuries are accidental without direct or positive proof on this point, as the law will not presume that the injuries are intentionally self-inflicted. (*Stanton* v. *Travelers Ins. Co.*, 83 Conn. 708; 78 A. 317; *Wilkinson* v. *Ætna Life Ins. Co.*, 240 Ill. 205; 88 N. E. 550; *Allen* v. *Travelers Prot. Assn.*, 163 Iowa, 217; 143 N. W. 574; *Roeh* v. *Business Men's Prot. Assn.*, 164 Iowa, 199; 145 N. W. 479; *Bohaker* v. *Travelers Ins. Co.*, 215 Mass. 32; 102 N. E. 342; *Ætna Life Ins. Co.* v. *Milward*, 118 Ky. 716; 82 S. W. 364; *Smith* v. *Travelers Ins. Co.*, 219 Mass. 147; 106 N. E. 607; *Hornby* v. *State L. Ins. Co.*, 106 Neb. 575; 184 N. W. 84; *Cronkhite* v. *Travelers Ins. Co.*, 75 Wis. 116; 43 N. W. 731; *Jones* v. *U. S. Mut. Acc. Assn. of the City of N. Y.*, 92 Iowa, 652; 61 N. W. 485.) Death by the intentional discharge of a firearm at the insured by an unknown person is accidental. (See *Button* v. *American Mutual Acc. Assn.*, 92 Wis. 83; 65 N. W. 861.) Furthermore, it has been held that an intentional homicide is an accident within the meaning of an accident policy. (*Furbush* v. *Maryland Cas. Co.*, 131 Mich. 234; 91 N. W. 135; *Robinson* v. *Mutual Acc. Assn.*, 68 Fed. 825; *Interstate Business Men's, etc.*, v. *Lester*, 257 id. 225.)

The testimony adduced and all the circumstances point conclusively to the fact that the insured was " taken for a ride " and shot and killed. The body of the insured was found exactly in the center of the intersection of Oakland terrace and Compton terrace, in the township of Hillside, N. J., which is between Newark and Elizabeth, on June 10, 1933, at one-forty-five P. M. The insured was still alive, although there were several bullet wounds in his head when the police arrived. The police searched the body

and apparently no personal effects had been removed. A gold wrist watch was found on the body and thirty-four dollars and thirty-five cents in cash was found in the clothing. A diamond ring was also found. It is obvious from those circumstances that robbery was not the motive for the killing. From the position where the body was found, at the intersection of two roads, it is apparent that it had been dumped there from some vehicle. The police thereafter, and in the same afternoon, searched the apartment in Newark occupied by the insured and his wife and at the bottom of a golf bag in the apartment three loaded guns were found; one was a police regulation 38-calibre Smith & Wesson revolver, another was a 38-calibre Colt, detective special, and the third was a Spanish 32-calibre automatic. It was conceded that the golf bag belonged to the insured. The police, after further investigation, went to an office building in Newark where the insured had an office. They searched this office and found therein only some office furniture and telephones. They found nothing in the desks or cabinets. Apparently everything which might serve to identify the occupants of the office or the nature of the business conducted there had been removed. The door of the office bore the legend " Operators of Industrial Equipment." The names of " Barton " and " Nolan " also appeared upon the door. The superintendent of the building testified that a man by the name of " Barton " rented the office and paid the rent. He later identified the insured as " Barton." The superintendent was unable to say what kind of business was conducted in the office under the name of " Operators of Industrial Equipment." The business of the insured was given in the death certificate as " real estate operator " and his sister testified at the trial that, so far as she knew, her brother was engaged in the real estate business.

The defendant contended that the insured was engaged in some other business; that something in the nature of a " racket " was conducted in the office in Newark, and that fact is indicated because the insured employed an alias, and, if a legitimate business had been conducted there, somebody would have appeared at the office after the death of the insured to take care of or wind up the business. It is also contended by the defendant that the plaintiff is not entitled to recover and that the so-called " aggressor " rule which has been stated in numerous cases involving actions for double indemnity, should be extended to a situation such as has been established in this case. Defendant contends that the insured was a gangster and had apparently been engaged in some unlawful activities, and was in the habit of going around armed and, in the vernacular of the day, was " taken for a ride "

and killed in typical gangster fashion and that his death was not occasioned by accidental means. It has generally been held that where one, by his own unlawful acts of aggression, brings about an assault upon himself, which results in injuries causing his death, under circumstances from which he could reasonably foresee that his act of aggression would bring about an assault upon himself, his death resulting from such assault was not occasioned by accidental means. (*McGuire* v. *Metropolitan Life Ins. Co.*, 164 Tenn. 32; 46 S. W. [2d] 53; *Horan* v. *Prudential Ins. Co.*, 104 Penn. Super. Ct. 47; 159 A. 69; *Hutton* v. *States Acc. Ins. Co.*, 267 Ill. 267; 108 N. E. 296; *Taliaferro* v. *Travelers Prot. Assn.*, 80 Fed. 368; *Occidental Life Ins. Co.* v. *Holcomb*, 10 F. [2d] 125; *Isoard* v. *Mutual Life Ins. Co.*, 22 id. 956; *Prudential Cas. Co.* v. *Curry*, 10 Ala. App. 642; 65 So. 852; *Price* v. *Occidental Life Ins. Co.*, 169 Cal. 800; 147 P. 1175; *Postler* v. *Travelers Ins. Co.*, 173 Cal. 1; 158 P. 1022; *Gray* v. *Western States Life Ins. Co.*, [Cal. App.] 298 id. 512; *De Mello* v. *John Hancock Mutual Life Ins. Co.*, 281 Mass. 190; 183 N. E. 255; *Fabian* v. *Prudential Ins. Co.*, 139 Misc. 640; *Manno* v. *Metropolitan Life Ins. Co.*, Id. 848; *Piotrowski* v. *Prudential Ins. Co.*, 141 id. 172; *Raven Halls, Inc.*, v. *U. S. Fidelity & Guaranty Co.*, 142 id. 454.)

The facts in the cases cited are not analogous to the case at at bar. In the cases cited, some act of aggression or some unlawful or criminal act of the insured brought upon him an assault, which resulted in death, and in all those cases it was held that death under such circumstances was not effected by accidental means as that term was employed in the policies or certificates of insurance involved. Moreover, the factual distinction between the cases cited and the case at bar is that in the former, the assault provoked by the insured followed almost immediately or within a comparatively short time after the acts of provocation.

In the case of *Frank* v. *Metropolitan Life Ins. Co.* (N. Y. L. J. May 23, 1934; affd., 243 App. Div. 693) it appeared that the insured had a long criminal record, had been arrested a number of times, had jumped his bail and was a fugitive from justice, was wanted by the police for murder and was engaged in the beer racket with one Waxey Gordon, who was later convicted of income tax frauds in connection with said racket. A motion for summary judgment was granted in an action brought to recover for double indemnity under a policy of insurance. The court in that case said: " The insured met his death while seated in a restaurant in Los Angeles, Cal. Three men entered, walked directly to the table at which the insured and another man were seated and immediately opened fire and killed both. This is sufficient to establish ' external violent

and accidental means,' as provided in the policy, and there is no proof that death was ' sustained while or as a result of participation in or attempting to commit an assault or felony.' The defendant's attempt to connect the insured with participation in a felony committed several months previously in the City of New York is too remote. (*Bradley* v. *Mutual Benefit Life Ins. Co.*, 45 N. Y. 422; *Murray* v. *New York Life Ins. Co.*, 96 id. 614.) Motion for summary judgment granted."

I am of the opinion in the case at bar that the defendant has failed to establish that the insured committed some act of aggression, unlawful or criminal act, which brought upon him an assault which resulted in his death and the plaintiff is entitled to recover.

Verdict directed in favor of the plaintiff for $2,000. Ten days' stay and sixty days to make a case.