LAURA FALLINS v. DURHAM LIFE INSURANCE CO.

(Filed 30 October, 1957)

1. **Insurance § 41—**

In an action on an accidental death policy, the burden is on plaintiff to prove that insured met his death by bodily injury effected directly through external, violent and accidental means, within the coverage of the policy, and, upon such a showing, the burden is upon insurer to prove defenses under the exclusion clauses, such as that insured's death resulted directly or indirectly from insured's participation in, or attempt to commit an assault or a felony, or violence intentionally inflicted by another.

2. **Insurance § 38—**

Death is "effected by accidental means" if in the line of proximate causation the act, event, or condition from the standpoint of the insured person is unintended, unexpected, unusual, or unknown. The unintended acts of the insured are deemed accidental, as well as the acts of another person, when done without the consent of insured unless they are provoked and should have been expected by insured.

3. **Insurance § 41—**

Plaintiff's evidence tending to show that insured was engaged in a fight with another boy when the uncle of the other boy shot in their direction for the purpose of frightening them into stopping their fight, and that insured was hit and mortally wounded by the shot, is sufficient to go to the jury and support its finding that the death of insured was effected by external, violent and accidental means.

4. **Same—Evidence held not to warrant nonsuit on defense that insured's death resulted from his participation in assault.**

The evidence disclosed that insured and another boy were fighting when the uncle of the other boy shot in their direction for the purpose of frightening them into stopping their fight, resulting in the fatal injury of insured. There was no evidence that either party to the fight used or attempted to use any weapon or that any injury was threatened or anticipated by them or that insured was the aggressor under circumstances which rendered serious injury or death likely. *Held:* The evidence does not warrant nonsuit under the exclusion clause of the policy on the ground that insured's death resulted directly or indirectly from his participation in an assault.

5. **Same—**

The evidence disclosed that insured and another boy were fighting. The uncle of the other boy testified that he shot in their direction for the purpose of frightening them into stopping their fight, but that he did not intend to injure either of them. *Held:* The evidence does not warrant nonsuit under the exclusion clause of the policy on the ground that insured's death resulted from violence intentionally inflicted by another, since under the testimony the uncle, although he intentionally fired the shot, did not intend to inflict any injury.

6. **Appeal and Error § 42—**

A party may not complain of an asserted error in the charge which is favorable to him.

APPEAL by defendant from *Frizzelle, J.,* June, 1957 Civil Term, CARTERET Superior Court.

Civil action by the beneficiary against the defendant to recover benefits under a policy insuring Albert O. Fallins against death by external, violent, and accidental means. The exclusion clause provided: "Insurance under this policy shall be null and void if the insured's death resulted directly or indirectly from any of the following causes: . . . (d) participating in or attempting to commit an assault or felony, (e) violence intentionally inflicted by another person." Only two witnesses testified in the case: The plaintiff, that she gave notice, and Levi Williams. The latter testified: "On December 31, 1954, I was told my nephew, Abraham, was fighting down behind a telephone pole. I did not know with whom he was fighting. My nephew is about 19 years old and about the same age as Albert Fallins, the deceased. I took my rifle out of the house and shot at the telephone pole which was about 50 feet away from me. . . . Albert and Abraham were about two or three feet behind the pole. I aimed near the bottom of the telephone pole, about four feet from the ground. My intent on firing the rifle was to part Abraham and Albert. However, at the time I didn't know it was Albert. Me wouldn't have done it for nothing. I fired the rifle to make them part. It was about 7:30 at night and it was dark. . . . Alberta

Fair came running in the house and said, 'Her tell they had been down there fighting and didn't say who it was.' "

The defendant moved for a nonsuit at the close of the plaintiff's evidence. The court overruled the motion and the defendant excepted. The defendant did not offer evidence. The court submitted the following issues which the jury answered as indicated:

"1. Was the death of Albert Fallin(s) effected directly through external, violent and accidental means?
Answer: Yes.

"2. Did the death of Albert Fallin(s) result directly or indirectly from participating in or attempting to commit an assault?
Answer: No.

"3. Did the death of Albert Fallin(s) result directly or indirectly from violence intentionally inflicted by another person?
Answer: No."

The fourth issue, as to the amount of recovery, if any, was answered by consent.

The defendant submitted a request for instructions which amounted to a peremptory charge in its favor and which the court refused. From the judgment in accordance with the verdict, the defendant appealed.

*George W. Ball, George M. Womble,*
*By: G. M. Womble, for defendant appellant.*
*C. R. Wheatly, Jr., for plaintiff, appellee.*

HIGGINS, J. The defendant's exception to the instructions and its motion for nonsuit raise the same question—the sufficiency of the evidence to go to the jury.

In cases of this character "the plaintiff, to establish a *prima facie* case, must prove (1) the existence of the contract or policy sued on; (2) the death of the insured or the happening of the event provided for in the policy, and the giving of notice and proof of death (or other event), as required by the policy. On the other hand, the burden is on the company to show a violation of conditions avoiding an otherwise valid policy, or exceptions in the policy which limit the liability of the company." *Collins v. Casualty Co.,* 172 N.C. 543, 90 S.E. 585. The burden is on the plaintiff to show the insured met his death by bodily injury effected directly through external, violent, and accidental means, and upon such a showing the defendant can

relieve itself of liability by showing the insured's death resulted directly or indirectly from (d) participating in, or attempting to commit an assault or a felony, or (e) violence intentionally inflicted by another.

The only witness (except as to proof of loss) was Levi Williams, who testified in substance that upon being told his nephew and some other boy were fighting, fired his rifle at a telephone pole for the purpose of stopping the fight. "Me wouldn't have done it for nothing. Me wanted to stop them from fighting. . . . Me did that so they would hear that so that would make them stop fighting."

There was no evidence the insured was the aggressor in the fight or that he brought it on; no evidence that either was hurt or in danger. Williams, according to his testimony, intentionally fired a rifle at the telephone pole in order to stop the fight, but with no intent to injure either participant. The jurors heard the story. They observed the witness when he told it. They weighed the testimony and found for the plaintiff on all issues. Does the evidence show that death was effected by accidental means?

An injury is "effected by accidental means" if in the line of proximate causation the act, event, or condition from the standpoint of the insured person is unintended, unexpected, unusual, or unknown. The unintended acts of the insured are deemed accidental. Injuries caused to the insured by the acts of another person, without the consent of the insured, are held due to accidental means unless the injurious acts are provoked and should have been expected by the insured. Vance on Insurance, 3rd ed., Sec. 181, p. 947; *Warren v. Ins. Co.,* 215 N.C. 402, 2 S.E. 2d 17; *Powers v. Ins. Co.,* 186 N.C. 336, 119 S.E. 481; *Ziolkowski v. Continental Casualty Co.,* 365 Ill. 594; *Franchebois v. New York Life Ins. Co.,* 171 La. 358, 131 So. 46; *Hutson v. Continental Casualty Co.,* 142 Miss. 388, 107 So. 520; *Eagan v. Prudential Ins. Co.* (Mo.) 107 S.W. 2d 133; *Price v. Occidental Life Ins. Co.,* 169 Cal. 800, 147 p. 1175; *Goldfeder v. Metropolitan Life Ins. Co.,* 280 N.Y.S. 552; *Mutual Life Ins. Co. v. Distretti,* 159 Tenn. 138; *Mutual Ben. Health & Accident Ass'n. v. Ryder,* 166 Va. 446, 185 S.E. 894; *Nalty v. Federal Casualty Co.,* 245 Ill. App. 180.

Under the foregoing authorities, the plaintiff's evidence was sufficient to go to the jury and to support its finding that the death of the insured was effected directly through external, violent, and accidental means. That finding brought the insured within the coverage of the policy.

The defendant contended, however, that the insured's death resulted directly or indirectly from (d) his participating in an

attempt to commit an assault or felony, or (e) from violence intentionally inflicted by another person. The court submitted appropriate issues, both of which were answered for the plaintiff. These issues arose under the exclusion clauses of the policy. As to them, the burden of proof was on the defendant. *MacClure v. Casualty Co.,* 229 N.C. 305, 49 S.E. 2d 742; *Pearson v. Pearson,* 227 N.C. 31, 40 S.E. 2d 477. Ordinarily, the question whether a party has carried the burden of proof is for the jury.

In this case the insured was not injured by his adversary in the fight but by a stranger to it who shot, or claimed he shot, only to frighten the boys into stopping their fight. There is nothing in the evidence to indicate that either participant in the fight could reasonably expect to be killed by a "crackpot" who thought by shooting into a telephone pole he could stop a boyish fight. There is no suggestion in the evidence that either party to the fight used, or attempted to use any weapon, or that any injury was threatened or anticipated by either of the boys. The evidence in this case is insufficient to call into play the aggressor defense doctrine. Evidence is lacking that the insured was the aggressor in an affray under circumstances which rendered serious injury or death likely. *Clay v. Ins. Co.,* 174 N.C. 642, 94 S.E. 289.

The defendant has contended that notwithstanding the unfavorable verdict on the first and second issues, nevertheless the jury should find the insured's death resulted from *violence intentionally inflicted by another person.* While all the evidence is to the effect that Williams intentionally fired the rifle, it is likewise to the effect he did not intend to injure either participant. The story may or may not be true, but that was for the jury.

In the case of *Epps v. Gate City Life Ins. Co.,* 201 N.C. 695, 161 S.E. 211, cited by the defendant, in denying liability this Court said: "It is immaterial that the officer did not intend to kill the insured; *he did intend to shoot him and this was the act that caused his death.*" (emphasis added). In the Epps case the officer *intentionally* shot the insured. In this case the witness *unintentionally* shot the insured. In order to come within the exclusion clause in the policy, the violence must be *intentionally inflicted.* It was so inflicted in the Epps case; likewise in *Warren v. Ins. Co.,* 219 N.C. 368, 13 S.E. 2d 609. It was not so inflicted in this case. Where a provision of the policy excludes intentional injury it is the intention of the person inflicting the injury that is controlling. 45 C.J.S., sec. 772, p. 800.

The defendant brings forward under proper assignments of error a number of exceptions to the charge. The Assignment No.

7, based on Exception No. 7, relates to the charge on the first issue. After properly charging as to the burden of proof and to the facts necessary to be found in order to answer that issue, "yes," nevertheless, the jury might still answer the issue "no" if it found the killing was intentional. Properly, the latter part of this charge involved the third issue. The defendant cannot complain, therefore, because it had the benefit of the charge on intentional killing on both issues. The court presented the contentions of the parties fairly. It charged in substantial accord with the principles of law herein expressed as applicable to the case. No error of substance appears.

No error.