EARL J. BARRINO, ADMINISTRATOR OF THE ESTATE OF LORA ANN BARRINO v. RADIATOR SPECIALTY COMPANY

No. 439A84

(Filed 18 February 1986)

**Master and Servant § 87— workers' compensation—alleged intentional acts by employer—common law action precluded**

In a negligence action against an employer by the administrator of the estate of an employee who allegedly died as a result of defendant's willful and wanton negligence, summary judgment was properly entered for defendant because the Workers' Compensation Act is the exclusive remedy and an employee may not bring a civil action against an employer for injuries received as a result of such negligence. It was not necessary to decide whether the allegations of the complaint were adequate to allege conduct that would remove the employer from the exclusivity provisions of the Workers' Compensation Act because those allegations would only have provided a choice of remedies and plaintiff had already made a binding election to recover under the Workers' Compensation Act. Moreover, the exclusiveness of the Act cannot be avoided merely because the conduct complained of is alleged to violate the National Electric Code and OSHANC safety regulations. N.C.G.S. 97-10.2; N.C.G.S. 97-10.1, N.C.G.S. 97-12.

Justice BILLINGS concurring.

Justice MITCHELL joins in the concurring opinion.

Justice MARTIN dissenting.

Justices EXUM and FRYE join in the dissenting opinion.

APPEAL as of right pursuant to N.C.G.S. § 7A-30(2) from a divided panel of the Court of Appeals, 69 N.C. App. 501, 317 S.E. 2d 51 (1984) which affirmed the judgment of *Griffin, J.,* entered at the 21 March 1982 Schedule "C" Session of Superior Court, MECKLENBURG County, allowing defendant's motion for summary judgment.

Plaintiff's intestate, Lora Ann Barrino, an employee of the defendant, was severely burned and otherwise injured in an explosion and fire in defendant's plant on 26 November 1980. Following the explosion, Miss Barrino received benefits under the Workers' Compensation Act (hereinafter the "Act") for the period that she was totally disabled prior to her death on 10 December 1980. Payments were also made under the Act for medical and funeral expenses and, as Miss Barrino was unmarried and had no

Barrino v. Radiator Specialty Co.

children, the workers' compensation death benefits were paid to the plaintiff (in his individual capacity as father) and his wife, Christine Barrino, as parents of the intestate. Total benefits paid by the workers' compensation carrier totaled approximately $69,000.

Plaintiff, the father of Lora Ann Barrino and administrator of her estate, subsequent to his intestate's death, filed this civil action against the defendant employer in Superior Court, Mecklenburg County on 24 November 1982, seeking compensatory and punitive damages and recovery for the wrongful death of plaintiff's intestate.

The defendant filed an answer containing general denials of the material allegations of plaintiff's complaint and asserting *inter alia* various defenses based upon the exclusivity of plaintiff's remedy under the Workers' Compensation Act.

After the exchange of certain requests for admissions and interrogatories and answers thereto, defendant moved for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. The defendant's motion was heard by Judge Kenneth Griffin and summary judgment was entered for defendant and plaintiff's motion was dismissed with prejudice on 23 March 1983. Plaintiff appealed and the majority of the panel of the Court of Appeals affirmed the judgment of the trial court. The case is before us by virtue of a dissent in the Court of Appeals filed by Judge Phillips.

*Chambers, Ferguson, Watt, Wallas & Adkins, P.A., by Melvin L. Watt, for plaintiff-appellant.*

*Golding, Crews, Meekins, Gordon & Gray, by James P. Crews, and Weinstein, Sturges, Odom, Groves, Bigger, Jonas & Campbell, P.A., by John J. Doyle, Jr., for defendant-appellee.*

MEYER, Justice.

The primary issue before this Court is whether the North Carolina Workers' Compensation Act provides the exclusive remedy when an employee is injured in the course of his or her employment by the willful, wanton and reckless negligence of the employer. We hold that the Act is the exclusive remedy and that

the employee may not bring a civil action against the employer for injuries received as a result of such negligence. Accordingly, we affirm the decision of the Court of Appeals which affirmed the trial court's entry of summary judgment in favor of the defendant-employer.

The defendant, Radiator Specialty Company, is the owner and operator of a manufacturing plant located at Indian Trail, North Carolina. On 26 November 1980 Lora Ann Barrino was working at the plant as an employee of defendant. At approximately 9:05 a.m. an explosion and fire occurred at the plant which resulted in severe second and third degree burns over seventy per cent of Miss Barrino's body. She lived for approximately fourteen days thereafter but died on 10 December 1980 as a result of injuries sustained in the explosion and fire. At the time of her death, Miss Barrino was unmarried and had no children. She was survived by her parents, Earl J. and Christine Barrino, who were the only persons entitled to receive workers' compensation death benefits and were also the sole heirs and distributees of Miss Barrino under the North Carolina law of intestate succession. The parents applied for and received the death benefits of $29,028.30, which were paid to them by defendant's workers' compensation insurance carrier. The carrier also paid $170.68 in lost wages, $35,542.50 for medical expenses, $1,000.00 for burial expenses and $3,300.00 for attorneys fees, for a total of $69,041.48.

Miss Barrino's father, Earl J. Barrino, was appointed administrator of her estate. After the workers' compensation benefits were paid, and within two years of his intestate's death, the plaintiff-administrator filed this civil action against the defendant-employer seeking compensatory damages for injuries, pain and suffering, lost wages, medical expenses, and other losses incurred by the intestate, recovery for wrongful death and punitive damages.

The allegations concerning the specific acts of the defendant-employer complained of and of proximate cause are found in paragraphs 6, 7 and 8 of the complaint and are as follows:

      6. At the time and place set out above, the defendant recklessly, wantonly, willfully, intentionally and with reckless disregard of the rights and safety of plaintiff's intestate or with full knowledge and actual intent that defendant's willful

misconduct would expose plaintiff's intestate to serious injury, harm or death:

a) designed, constructed, located, installed and operated equipment used in handling, storing and utilizing liquefied petroleum gases at its Indian Trail plant and facilities without inspections and approvals required by law and in a wantonly and willfully dangerous manner in violation of Section 119-48 *et seq.* of the North Carolina General Statutes and rules and regulations promulgated pursuant thereto;

b) at its plant and facilities at Indian Trail, North Carolina at which ignitable concentrations of flammable gases or vapors existed and at which volatile flammable liquids and flammable gases were handled, processed and used, defendant:

(1-6) [Here there appear in the complaint, in six separately numbered sub-paragraphs, allegations of acts of the defendant-employer said to violate the National Electrical Code and the Occupational Safety and Health Act of North Carolina (OSHANC).]

c) covered meters designed to detect and warn of dangerous and explosive gas and vapor levels in the Indian Trail plant and facility with plastic bags to assure that said meters would not warn plaintiff's intestate and other employees of the dangers then and there existing;

d) turned off alarms which sounded to warn of dangerous and explosive gas and vapor levels in the Indian Trail plant and facility and instructed plaintiff's intestate and other employees to resume work despite the sounding of the alarms and after the alarms had been disengaged; and

e) failed to provide a safe work place in which plaintiff's intestate and other employees could work without fear of harm and injury and took affirmative, wanton, reckless and intentional steps as heretofore set forth to create dangerous working conditions for plaintiff's intestate and other employees.

7. As the sole, direct and proximate consequence of the reckless, wanton, willful and intentional acts of defendant as

heretofore set forth, defendant's plant exploded and burned on November 26, 1980 and the plaintiff's intestate received serious, painful and disfiguring bodily injuries causing medical expenses in excess of $35,000.00, lost income and other expenses.

8. As the sole, direct and proximate consequence of the reckless, wanton, willful and intentional acts of defendant as heretofore set forth the plaintiff's intestate died on December 10, 1980.

The defendant filed an answer alleging five defenses: (1) the complaint fails to state a claim against the defendant upon which relief could be granted; (2) a general denial of any negligent or intentional act and that any such act proximately caused the deceased's injuries; (3) that the plaintiff's intestate and the defendant-employer were at all times subject to and complied with the provisions of the North Carolina Workers' Compensation Act and that the rights and benefits provided to plaintiff's intestate under the Act are exclusive and plaintiff is not entitled to pursue, and is barred absolutely from pursuing, a civil action against defendant pursuant to N.C.G.S. § 97-10.1; (4) the plaintiff, as personal representative, has applied for and received all medical and burial benefits due under the Act and has thus made a binding election of remedies which precludes him as a matter of law from pursuing the civil action; and (5) the plaintiff and his wife, as parents of the deceased, are the only persons entitled to receive the compensation for death benefits pursuant to the Act and are also the sole heirs and distributees of the deceased under the law of intestate succession and having applied for and received the death benefits, paid by defendant's workers' compensation carrier, plaintiff is precluded and estopped from pursuing the civil action.

In response to the defendant-employer's Request for Admissions, the plaintiff-administrator admitted *inter alia* existence of the employee-employer relationship; compliance with and coverage under the Act; payment of all the amounts alleged in defendant's answer by defendant's carrier in satisfaction of the workers' compensation claims of Lora Ann Barrino, her next of kin, heirs, personal representative and estate; that plaintiff and his wife

were the only parties entitled to receive the death benefits under the Act and that they had applied for and received those benefits.

Thereafter, defendant filed a Motion For Summary Judgment alleging that there was no genuine issue as to any material fact on the following grounds: (1) in light of the parties' compliance with and coverage under the Act at the time the fatal injuries were incurred, the action is barred absolutely by the exclusivity provisions of the Act; (2) even if the complaint was construed to allege an intentional assault on plaintiff's intestate, those entitled to recovery had applied for and received full benefits under the Act and thus a binding election of remedies had been made and the receipt of benefits by the plaintiff and all others entitled to proceeds of any judgment in the civil action constitutes a bar to the action. The motion was specifically based on the pleadings and responses of the plaintiff to defendant's request for admissions.

The summary judgment motion came on for hearing before Judge Griffin and he granted summary judgment in favor of the defendant-employer and dismissed the action with prejudice on 23 March 1983. The plaintiff-administrator appealed to the Court of Appeals which affirmed the summary judgment. *Barrino v. Radiator Specialty Co.*, 69 N.C. App. 501, 317 S.E. 2d 51 (1984).

We first examine the question of whether, when compliance with and coverage under our Workers' Compensation Act exist, an injured employee may bring a civil action against the employer to recover damages for his injuries caused by the willful and wanton negligence of the employer.

The provisions of the North Carolina Workers' Compensation Act pertinent to this question are N.C.G.S. § 97-9 and § 97-10.1. N.C.G.S. § 97-9 provides:

> Every employer subject to the compensation provisions of this Article shall secure the payment of compensation to his employees in the manner hereinafter provided; and while such security remains in force, he or those conducting his business shall only be liable to any employee for personal injury or death by accident to the extent and in the manner herein specified.

N.C.G.S. § 97-10.1 provides:

> If the employee and the employer are subject to and have complied with the provisions of this Article, then *rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise* on account of such injury or death. (Emphasis added.)

This latter provision of our Act, N.C.G.S. § 97-10.1 is commonly referred to as an "exclusivity provision." We have held that this provision bars a worker from maintaining a common law negligence action against his employer. *Hicks v. Guilford County*, 267 N.C. 364, 148 S.E. 2d 240 (1966). Such exclusivity clauses have consistently been held to be constitutional under the equal protection and due process clauses of both federal and state constitutions. *See* 2A Larson, The Law of Workmen's Compensation § 65.20 (1984) (hereinafter cited as *Larson*).

For a very brief explanation of the exclusivity provision we turn to §§ 65.11 and 65.14 of Professor Larson's treatise.

> Once a workmen's compensation act has become applicable either through compulsion or election, it affords the exclusive remedy for injury by the employee or his dependents against the employer and insurance carrier. This is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts.

Larson, § 65.11.

> The operative fact in establishing exclusiveness is that of actual coverage, not of election to claim compensation in a particular case.
>
> Even if the employee himself has never made application for compensation, his right to sue his employer at common law is barred by the existence of the compensation remedy.

Larson, § 65.14.

A recognized exception to the Act's exclusivity provision is the injured employee's ability to bring a civil action against his employer when his injuries result from a deliberate assault by the employer with intent to actually injure him. *See, e.g., Warner v. Leder,* 234 N.C. 727, 69 S.E. 2d 6 (1952); *Essick v. Lexington,* 232 N.C. 200, 60 S.E. 2d 106 (1950). For an explanation of the legal theory upon which this exception rests we turn again to Professor Larson's treatise:

> An intentional assault by the employer upon the employee . . . will ground a common-law action for damages. Several legal theories have been advanced to support this result. The best is that the employer will not be heard to allege that the injury was "accidental" and therefore was under the exclusive provisions of the Workmen's Compensation Act, when he himself intentionally committed the act.

Larson, § 68.11.

The plaintiff forcefully argues that the right of the injured employee to sue his employer should be further extended to include the situation where the employee is injured by the negligence of the employer when that negligence is willful, wanton and reckless and is the result of intentional acts of the employer. Any such extension would be contrary to the virtually unanimous rule throughout the country.

> Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, *the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.*
>
>      . . . .
>
> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of

the kind of actual intention to injure that robs the injury of accidental character. (Emphasis added.)

Larson, § 68.13.

Professor Larson alludes to two New York cases which dramatically illustrate precisely how exacting is the burden of proving real intent on the part of the employer to harm the employee in order to justify a common-law action. In *Artonio v. Hirsch*, 3 A.D. 2d 939, 163 N.Y.S. 2d 489 (1957), the employee brought a civil action against the employer, alleging that the employer had deliberately sealed and intentionally made inoperative certain safety locks on steel presses necessary for the protection of the employee who operated them. The New York Supreme Court held these allegations insufficient to overcome the exclusiveness of the Workers' Compensation Act remedy. In *Santiago v. Brill Monfort Company*, 11 A.D. 2d 1041, 205 N.Y.S. 2d 919 (1960), the employer appealed the lower court's denial of its motion to dismiss suits brought by employees wherein the complaints alleged that the employer had unlawfully and intentionally removed safety guards from machines merely to increase production and profits and had thereby "committed an assault" on the employees. The New York Supreme Court dismissed the tort actions against the employer on the basis that deliberate removal of safety guards was not equivalent to deliberate intent to injure, and nothing less than a deliberate intent to injure would suffice to break the exclusiveness barrier. *Santiago*, 11 A.D. 2d 1041, 205 N.Y.S. 2d 919; Larson, § 68.13.

As to the seeming harshness of this rule, Professor Larson notes:

> If these decisions seem rather strict, one must remind oneself that what is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of intentional versus accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.

Larson, § 68.13. *See also Southern Wire & Iron, Inc. v. Fowler*, 217 Ga. 727, 124 S.E. 2d 738 (1962), wherein it was held that a common-law action against the employer corporation would not lie on allegations that the president of the corporation had willfully and intentionally ordered the employee to work with his bare hands in an acid vat of whose dangerous propensities the employee was unaware, for the alleged purpose of punishing the employee for his refusal to divulge the names of fellow employees who attended a union organization meeting.

In our recent case of *Freeman v. SCM Corporation*, 311 N.C. 294, 316 S.E. 2d 81 (1984), the plaintiff, an employee of defendant SCM Corporation, was working on a molding machine when she noticed that the machine was malfunctioning. She reported the problem to her supervisor and requested permission to turn off the machine. The supervisor ordered plaintiff to continue operating the machine. On subsequent occasions, plaintiff repeated her fears that the machine was not functioning properly but was consistently told to continue her work. Plaintiff was later struck in the face by a pressure bolt which blew out of the machine.

Plaintiff sought and recovered workers' compensation benefits for injury to her nose, back, neck and shoulder. Subsequently, plaintiff filed a civil action against the employer alleging that her injuries were caused by the *gross, willful and wanton negligence and by the intentional acts of the defendant-employer*. Plaintiff further alleged that her injuries did not result from an "accident" within the meaning of the Workers' Compensation Act and therefore her claim was not barred by the exclusivity provision of N.C.G.S. § 97-10.1. Defendant alleged lack of subject matter jurisdiction and moved to dismiss pursuant to Rule 12(b)(1) of the Rules of Civil Procedure. The trial court granted defendant's motion and the plaintiff appealed to the Court of Appeals.

The Court of Appeals held that since plaintiff had been compensated through payment of workers' compensation benefits, she was precluded from maintaining a separate action against her employer. On appeal to this Court, we concluded that the result reached by the Court of Appeals was correct and held that plaintiff's remedies under the Workers' Compensation Act were exclusive and that she was therefore precluded from recovering against her employer in an independent negligence action. In

response to a comment in the Court of Appeals' opinion that the plaintiff had "selected" a particular avenue of recovery, this Court stated:

> We wish to make it abundantly clear that in fact plaintiff had no "selection" as to the appropriate avenue of recovery for her injuries.
>
> General Statute 97-10.1 provides that:
>
>> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.
>
> Since plaintiff was here covered by and subject to the provisions of the Workers' Compensation Act, her rights and remedies against defendant employer were determined by the Act and she was required to pursue them in the North Carolina Industrial Commission. *See, e.g., Bryant v. Dougherty,* 267 N.C. 545, 148 S.E. 2d 548 (1966); *McCune v. Rhodes-Rhyne Mfg. Co.,* 217 N.C. 351, 8 S.E. 2d 219 (1940). She could not, in lieu of this avenue of recovery, institute a common law action against her employer in the civil courts of this State.

*Freeman,* 311 N.C. at 296, 316 S.E. 2d at 82.

In order for plaintiff to prevail in the case now before us we would have to overrule *Freeman* and numerous other decisions to the same effect. Indeed, plaintiff concedes in his brief before this Court that "It is quite apparent that, if the Court's conclusion as expressed in *Freeman v. SCM Corporation* is the current law in North Carolina, plaintiff's appeal cannot be sustained." Having now revisited *Freeman,* we conclude that its holding is sound and we therefore decline plaintiff's entreaty to overrule that decision.

We note that in certain instances not related to the liability of the *employer,* an employee injured during the course of his employment does have the option of proceeding in a civil action

for damages against the party who injured him. He may sue third parties who are strangers to the employment. N.C.G.S. § 97-10.2. He may sue a co-employee where there was actual intent to injure him, *see, e.g., Wesley v. Lea,* 252 N.C. 540, 114 S.E. 2d 350 (1960), and in our recent case of *Pleasant v. Johnson,* 312 N.C. 710, 325 S.E. 2d 244 (1985) (Meyer, J., dissenting), this option was extended to claims against co-employees when an employee is injured by the co-employee's willful, wanton and reckless negligence.

In *Pleasant,* the plaintiff and the defendant were co-employees. As plaintiff returned from lunch to the construction site where he and defendant were working, the plaintiff walked across the parking lot and a truck driven by the defendant struck him seriously injuring his right knee. The plaintiff received disability benefits under the Act and then commenced a civil action against the defendant co-employee alleging that defendant was willfully, recklessly and wantonly negligent in operating the motor vehicle in such a fashion as to see how close he could operate the vehicle to the plaintiff without actually striking him but, misjudging his ability to accomplish such a prank, actually struck the plaintiff.

The majority in *Pleasant* concluded that, at least as to co-employees, "injury to another resulting from willful, wanton and reckless negligence should also be treated as an intentional injury for purposes of our Workers' Compensation Act." After citing authority to the contrary from this and other jurisdictions, the majority stated: "*Despite* such authority to the contrary and the lack of an express statutory provision, however, we now hold that the Workers' Compensation Act does not shield a co-employee from common law liability for willful, wanton and reckless negligence." (Emphasis added.) 312 N.C. at 716, 325 S.E. 2d at 249.

However, in *Pleasant* we specifically noted that we did not decide, nor even consider, whether an *employer* may be sued in a civil action for the employer's willful, wanton and reckless negligence. The plaintiff in effect argues that the holding of *Pleasant* should be extended to the employer. We do not agree.

As a part of the rationale for allowing a civil suit against the co-employee for his willful, wanton and reckless negligence, the *Pleasant* majority cited three factors: (1) "Since the negligent co-employee is neither required to participate in the defense of the

compensation claim nor contribute to the award, he is not unduly prejudiced by permitting the injured employee to sue him after receiving benefits under the Act"; (2) "[W]hen an employee who receives benefits under the Act is awarded a judgment against a co-worker, any amount obtained will be disbursed according to the provisions of N.C.G.S. § 97-10.2 and may reduce the burden otherwise placed upon an innocent employer or insurer"; and (3) "[T]he fact that plaintiff has received benefits under the . . . Act does not foreclose him from bringing an action for the . . . [co-employee's] willful and wanton negligence." 312 N.C. at 717, 325 S.E. 2d at 249-50.

None of the foregoing factors obtain when the civil suit is against the employer as opposed to being against a co-employee. When the suit is against the employer and benefits have already been paid under the Act, (1) obviously, the employer has had to participate in the defense of the compensation claim *and* has had to pay the award (even if the employer is covered by insurance, premiums for coverage are based on experience factors); (2) since recovery in the civil action is also from the employer it can only result in greater liability even if credit is given for the benefits paid under the Act; and (3) as to the employer, even if the Act were not the exclusive remedy, the plaintiff would be deemed to have made an election of remedies when he sought and obtained benefits under the Act.

Plaintiff also contends that here, as in the case of suits against third parties who are strangers to the employment and in suits against fellow employees, a prior application for and receipt of workers' compensation benefits from the *employer* should not constitute a binding election of remedies. N.C.G.S. § 97-10.2; *Warner v. Leder*, 234 N.C. 727, 69 S.E. 2d 6; *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E. 2d 244. We do not agree.

In suits against third parties who are strangers to the employment and in suits against co-employees, the recovery from the tort-feasor is distributed pursuant to N.C.G.S. § 97-10.2(f)(1), (a) first to the payment of actual court costs, (b) second to the payment of attorney's fees, (c) third to reimburse the employer for the benefits paid by way of compensation, and (d) fourth all remaining proceeds to the employee or his personal representative. In the case of claims against the employer for intentional assaults

with intent to actually injure, however, the injured employee is put to an election of remedies between workers' compensation benefits and a civil action; the pursuit of either bars the right to pursue the other.

In his discussion of the rule permitting an employee to sue his employer for injuries intentionally inflicted, Professor Larson noted "It is interesting to observe that this holding has the rather remarkable effect of giving the employee in these circumstances an option to claim compensation or sue his employer at common law, although such options are usually not supposed to exist." Larson, § 68.12.

Despite the fact that in *Pleasant* this Court overruled our prior holdings in *Wesley v. Lea*, 252 N.C. 540, 114 S.E. 2d 350 and in *Warner v. Leder*, 234 N.C. 727, 69 S.E. 2d 6 as to suits against *co-employees* for willful and wanton negligence, the holding of those cases as to *employers* still obtains: "The acceptance of benefits under the Act forecloses the right of the employee to maintain a common law action . . . against the employer. . . ." *Warner*, 234 N.C. at 733, 69 S.E. 2d at 10.

We find it unnecessary to decide whether the allegations of the complaint are adequate to allege such conduct on the part of defendant-employer so as to remove the employer from the exclusivity provisions of the Workers' Compensation Act under the theory of an intentional assault with intent to actually injure. Assuming, *arguendo*, that the allegations adequately allege an intent to actually injure the employee, the result reached in this case would not differ. Such allegations would have done nothing more than have provided a choice of remedies and it is clear that even if such a choice of remedies existed, plaintiff had already made a binding election to recover under the Workers' Compensation Act. Having done so, he may not also pursue the civil action.

The plaintiff further contends that the exclusiveness of the Act is avoided because the allegations of the complaint charge violations of safety codes such as the National Electrical Code and the Occupational Safety and Health Act of North Carolina (OSHANC).

The federal Occupational Safety and Health Act contains a specific provision explicitly stating that it does not in any way af-

fect rights and liabilities of employees and employers under the workers' compensation laws:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4). We find this principle equally applicable to the case under discussion. The exclusiveness of the Act cannot be avoided by bringing a civil action against the employer merely because the conduct complained of is alleged to violate the National Electric Code and OSHANC safety regulations.

In *Byrd v. Fieldcrest Mills, Inc.*, 496 F. 2d 1323 (4th Cir. 1974), an employee was killed in an accident concededly arising out of the course of his employment. It was also conceded that the injury was covered by the North Carolina Workers' Compensation Act. The decedent's wife brought a civil action against the employer seeking damages on an independent federal cause of action for the employer's violation of certain provisions of the federal Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.* The Fourth Circuit Court of Appeals held that 29 U.S.C. § 653(b)(4), quoted above, precludes any private remedy based on OSHA if the private remedy would in any manner affect the rights of parties under the Workers' Compensation Act. *See also Mauch v. Stanley Structures, Inc.*, 641 P. 2d 1247 (Wyo. 1982). Neither can an injured employee escape the exclusivity of the Act by bringing a civil action against the employer based on state occupational safety and health acts. *See, e.g., Frith v. Harrah South Shore Corp.*, 92 Nev. 447, 552 P. 2d 337 (1976). *See also North v. United States Steel Corp.*, 495 F. 2d 810 (7th Cir. 1974); Larson, § 65.34.

It is also clear from the Act itself that such allegations of safety code violations do not remove the claim from the exclusivity of the Act. N.C.G.S. § 97-12 provides *inter alia* a penalty to the employer of a 10% increase in benefits "when the injury or death is caused by the willful failure of the employer to comply with any statutory requirement or any lawful order of the Commission.

. . ."[1] Accordingly, it is apparent that the legislature has specifically addressed this subject in the Act itself and has chosen to provide additional compensation when allegations such as the plaintiff has made in this case are proved in a claim made under the Act. Any change in the treatment to be accorded conduct alleged to violate safety codes is properly addressed by the legislature, rather than the courts.

In addition to compensatory damages, plaintiff has prayed for punitive damages. A claim for punitive damages is also subject to the bar of the exclusivity provision of the Act. At any point where compensatory damages are barred, punitive damages are also barred. *North v. United States Steel Corp.*, 495 F. 2d 810; *Stricklen v. Pearson Constr. Co.*, 185 Iowa 95, 169 N.W. 628 (1918); *Roof v. Velsicol Chem. Corp.*, 380 F. Supp. 1373 (N.D. Ohio 1974); *Liberty Mut. Ins. Co. v. Stevenson*, 212 Tenn. 178, 368 S.W. 2d 760 (1963); Larson, § 65.37.

The opinion of the Court of Appeals affirming the trial court's entry of summary judgment in favor of the defendant-employer is

Affirmed.

Justice BILLINGS concurring.

As Justice Meyer states in his opinion for the Court, it is unnecessary to decide whether the allegations of the complaint are adequate to allege an intentional assault with intent to actually injure, removing the employer from the exclusivity provisions of the Workers' Compensation Act, for the plaintiff has made a binding election.

In *Warner v. Leder*, 234 N.C. 727, 69 S.E. 2d 6 (1951) this Court rejected the plaintiff-employee's tort action against the president of his employer on two bases:

---

1. N.C.G.S. § 97-12 also provides a comparable penalty to the employee if the injury or death is caused by the employee's willful failure to use a safety appliance or perform a statutory duty or by his willful breach of a rule or regulation adopted by the employer, approved by the Commission, and brought to the knowledge of the employee prior to the injury.

First, it was admitted in the trial below that the defendant did not intentionally injure the plaintiff. And, in the second place, it is admitted that the plaintiff has applied for and received medical expenses and compensation for temporary total disability, and for permanent partial disability, in accordance with the provisions of the North Carolina Workmen's Compensation Act. *The acceptance of benefits under the act forecloses the right of the employee to maintain a common law action, under the exception pointed out, against the employer* "or those conducting his business."

The general rule in this respect is given by Horowitz, "Injury and Death Under Workmen's Compensation Laws," page 336, as follows: "Where an employer is guilty of felonious or willful assault on an employee he cannot relegate him to the compensation act for recovery. It would be against sound reason to allow the employer deliberately to batter his helper, and then compel the worker to accept moderate workmen's compensation benefits, either from his insurance carrier or from himself as self-insurer. The weight of authority gives the employee *the choice of suing the employer at common law or accepting compensation.*" *Essick v. Lexington, et als.,* [232 N.C. 200, 60 S.E. 2d 106 (1950)]. [Emphasis added.]

*Id.* at 733, 34, 69 S.E. 2d at 10.

Thus, at least since 1951, this Court has been aligned with the majority of American jurisdictions in holding that a successful compensation claim bars a subsequent damage suit against the employer in the situation where the Workers' Compensation Act is not the employee's exclusive remedy. 2A Larson, Workmen's Compensation Law §§ 67.31, 67.32 (1983 and 1985 supplement). This Court's recent decision in *Pleasant v. Johnson,* 312 N.C. 710, 325 S.E. 2d 244 (1985) does not change the long-standing law on this point.

Because the fact that the plaintiff has recovered all benefits provided for under the Act is affirmatively established and not contested, there is no genuine issue of material fact relating to the question of whether the plaintiff has made an election. Therefore, summary judgment was appropriately entered.

Justice MITCHELL joins in this concurring opinion.

Justice MARTIN dissenting.

I respectfully dissent. The primary issue before this Court is not, as the majority contends, whether the North Carolina Workers' Compensation Act provides the exclusive remedy for an employee injured by the willful, wanton, and reckless negligence of his employer. The question we must decide is whether the trial court erred in granting summary judgment for the defendant-employer in view of evidence put forth by the plaintiff which creates a genuine issue of material fact concerning defendant's subjective intent.

Summary judgment is properly granted when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact. *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). In the present case the trial court found defendant's defense based on the exclusivity provision of the Workers' Compensation Act, N.C.G.S. 97-10.1, adequate to sustain its motion for summary judgment. However, as the majority recognizes, the exclusivity provision is not absolute. An employee is not barred from bringing a civil suit against his employer when the injuries complained of are a result of the intentional actions of the employer. *Warner v. Leder*, 234 N.C. 727, 69 S.E. 2d 6 (1952); *Essick v. Lexington*, 232 N.C. 200, 60 S.E. 2d 106 (1950).

Because the issue of the intentional nature of defendant-employer's misconduct is determinative of plaintiff's right to maintain the present action, it clearly constitutes a material fact under Rule 56 of the North Carolina Rules of Civil Procedure. As such, summary judgment is proper only if the issue is not in controversy. Rule 56 does not authorize the court to decide a disputed issue of fact. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975).

Whether Lora Ann Barrino was killed as the result of intentional actions on the part of the defendant is a disputed issue of fact. Plaintiff sets forth numerous specific and illegal actions of the defendant. These include the covering of meters designed to warn of explosive gas and vapor levels and the turning off of alarms which would have sounded to warn of dangerous gas

levels. The only reasonable explanation for the corporation's actions in concealing and dismantling the warning devices is that it intended for its employees to be subjected to extremely hazardous working conditions and to the probable consequences of working in such conditions, including serious injury or death. As Prosser states: "Intent is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does." W. Prosser, *Handbook of the Law of Torts* § 8 (4th ed. 1971). *Accord* Restatement (Second) of Torts § 8A and comment b (1965). The death of Lora Ann Barrino or one of her co-workers was, at the very least, "substantially certain" to occur given defendant's deliberate failure to observe even basic safety laws.

For plaintiff to prove that defendant's conduct was intentionally tortious does not require a showing that the defendant corporation intended that plaintiff's daughter would be the particular victim or that death, as opposed to some lesser harm, would be the result. *Fallins v. Insurance Co.*, 247 N.C. 72, 100 S.E. 2d 214 (1957).

The above analysis of N.C.R. Civ. P. 56 and relevant case law thus indicates that plaintiff has in fact shown the question of defendant-employer's intent constitutes a genuine issue of material fact. Therefore, summary judgment was improper. It was especially inappropriate given that the case involves the defendant's subjective intent and issues of intent should usually be determined on the basis of circumstantial evidence and only rarely by summary judgment. *Girard Trust Bank v. Belk*, 41 N.C. App. 328, 255 S.E. 2d 430, *cert. denied*, 298 N.C. 293 (1979).

Finally, summary judgment is a drastic remedy and must be approached with caution so that no party is deprived of trial on a genuinely disputed factual issue. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). Summary judgment in the present case fails to serve its purpose in eliminating unnecessary trials, rather it serves to deprive the plaintiff of trial on a genuinely disputed issue.

In *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E. 2d 244 (1985), we held that the North Carolina Workers' Compensation Act does not insulate a co-employee from the effects of his negligence. We

stated our belief that such a result would "help to deter such con-
duct in the future. It would be a travesty of justice and logic to
permit a worker to injure a co-employee through such conduct,
and then compel the injured co-employee to accept moderate
benefits under the Act." *Id.* at 718, 325 S.E. 2d at 250 (citing S.
Horowitz, *Injury and Death Under Workmen's Compensation
Laws* 336 (1944)).

While this Court should be concerned with deterring negli-
gent and injurious horseplay on the part of a co-employee, we
should be more concerned with deterring intentional employer
conduct which is likely to endanger the lives and safety of
thousands of workers. Therefore, when an employee injured or
killed on the job sets forth in his complaint circumstances which
raise disputed questions of fact as to intentional employer miscon-
duct, summary judgment should be denied.

We should not permit an employer to assume that no matter
how egregious and deliberate his misconduct, the Workers' Com-
pensation Act will allow him statutory immunity. To do so would
contravene the legislative goal of promoting workplace safety.
N.C. Gen. Stat. § 95-126(b)(2) (1981). In addition, it is a basic prop-
osition of public policy that an insured is not allowed to protect
himself by insurance from the consequences of his intentional or
criminal wrongs. *Blackwell v. Insurance Co.,* 234 N.C. 559, 67 S.E.
2d 750 (1951). If we were to permit an employer to insure himself
against liability for the consequences of his intentional acts, we
would encourage the employer to weigh the economic costs of
compliance with safety regulations against the costs of workers'
compensation and to choose the most cost-effective course of con-
duct. If the possibility of a common law tort suit is to have any
significant effect in deterring intentional employer misconduct at
the workplace, the courts must be extremely cautious in using
summary judgment to dismiss an employee's action.

In order to justify its holding that the Workers' Compensa-
tion Act is plaintiff's exclusive remedy, the majority relies
primarily on two recent decisions of this Court: *Pleasant v.
Johnson,* 312 N.C. 710, 325 S.E. 2d 244, and *Freeman v. SCM
Corp.,* 311 N.C. 294, 316 S.E. 2d 81 (1984). However, both cases
deal solely with *negligent* misconduct on the part of an employer
or co-employee. It is patently misleading to attempt an analysis of

the present case, which deals with *intentional* employer misconduct, on the basis of our holdings in *Pleasant* and *Freeman.*

In *Freeman* we found that the Workers' Compensation Act provided the sole remedy for the plaintiff injured as a result of negligent conduct on the part of her employer. As the majority notes, we specifically stated: "We wish to make it abundantly clear that in fact plaintiff had no 'selection' as to the appropriate avenue of recovery for her injuries." 311 N.C. at 296, 316 S.E. 2d at 82. *Freeman* provides a clear statement of the law in North Carolina concerning suits by an employee which demonstrate negligent employer conduct. However, we need not, as the majority contends we must, overrule *Freeman* in order to find that the plaintiff in the instant case has a valid cause of action. In *Freeman* a single supervisory employee of the defendant corporation negligently permitted the plaintiff to continue working at a machine which the employee had reported as malfunctioning. In the present case the actions of the defendant-employer present a pattern of intentional and criminal[1] misconduct which endangered the lives of every person employed at defendant's plant. In contrast to *Freeman,* such actions are not likely to be attributable to a single employee but, instead, indicate a deliberate disregard of basic safety regulations on the part of the corporation as a whole. Widespread, deliberate, and criminal misconduct which is likely to result in the death of one or more persons is not properly deemed "negligent."

In *Pleasant* we concluded that the "Workers' Compensation Act does not shield a co-employee from common law liability for willful and reckless negligence." 312 N.C. at 716, 325 S.E. 2d at 249. As the majority notes, the plaintiff in *Pleasant* was injured as a result of a "prank." One afternoon after lunch the defendant co-employee attempted to see how close he could operate a truck

---

1. Willful violation of an Occupational Safety and Health Act rule constitutes a misdemeanor when said violation causes the death of an employee. N.C. Gen. Stat. § 95-139 (1981).

More enlightened jurisdictions have found somewhat harsher penalties appropriate. On 14 June 1985, in an Illinois case, three corporate officials were found guilty of murder in the death of an employee exposed to cyanide gas under totally unsafe working conditions. Subsequently, each of the three defendants was sentenced to twenty-five years in prison and fined $10,000. *People v. Film Recovery Systems,* The Raleigh News & Observer, July 2, 1985, at 4A, col. 4 (Ill. Cir. Ct., 4th Dist.).

to the plaintiff without actually hitting him. The defendant, however, misjudging his ability, struck the plaintiff. We characterized the defendant's conduct as willful, wanton, and reckless negligence and allowed the plaintiff to maintain a common law tort action against the co-employee.

In the present case, company officials systematically flaunted basic safety regulations and knowingly subjected every employee at the Indian Trail plant to death or serious injury. In *Pleasant* the defendant co-employee injured the plaintiff while engaged in horseplay. If the defendant's conduct in *Pleasant* constitutes willful, wanton, and reckless negligence, then clearly the conduct of the defendant-employer in this case embodies a degree of culpability beyond negligence and as such the exclusivity provision of the Workers' Compensation Act should not serve to shield the employer from liability for his tortious conduct.

In *Pleasant* we specifically did not decide the question of whether an *employer* may be sued in a civil action for his willful, wanton, and reckless negligence. It is a question we should still decline to decide as it is not determinative of the case at bar.

The majority cites *Byrd v. Fieldcrest Mills, Inc.*, 496 F.2d 1323 (4th Cir. 1974), as authority for its holding that plaintiff has made a binding election to recover under the Workers' Compensation Act and is thereby precluded from pursuing a civil action. However, *Byrd* involved an employee killed as a result of negligent conduct on the part of the employer. This Court has never held that an employee injured by the intentional conduct of his employer makes a binding election of remedies by his acceptance of workers' compensation benefits. As the Court concluded in *Warner v. Leder*, 234 N.C. 727, 69 S.E. 2d 6, the acceptance of benefits under the Act forecloses the right of the employee to maintain a common law *negligence* action against his employer.

The law in general disfavors the defense of election of remedies and it is to be narrowly applied. *Friederichsen v. Renard*, 247 U.S. 207, 62 L.Ed. 1075 (1918). As Larson states, "The least the courts can do is to insist upon a scrupulous respect for the requirements of a binding election." 2A A. Larson, *The Law of Workmen's Compensation* § 67.35 (1982).

One of the essential elements of an election of remedies defense, according to Larson, is that there must be an inherent

contradiction between the position taken by the plaintiff in the workers' compensation forum and the position he asserts in the common law action. *Id.* The term "accident" as used in the Workers' Compensation Act has been defined by this Court as "an unlooked for and untoward event which is not expected or designed by the injured employee." *Harding v. Thomas & Howard Co.*, 256 N.C. 427, 124 S.E. 2d 109 (1962). Therefore, it is not contradictory in North Carolina to assert that an act was at once an accident and an intentional tort. "An unexpected assault may be considered an accident despite its characterization as an intentional tort." *Daniels v. Swofford*, 55 N.C. App. 555, 558, 286 S.E. 2d 582, 584 (1982). There is no inherent inconsistency in plaintiff's effort to recover for the intentional misconduct of the defendant. The laws of North Carolina have provided the plaintiff with both a statutory and a common law remedy and the doctrine of election of remedies does not function to require a choice between the two. A crucial element of the election of remedies defense, "inherent inconsistency," is lacking and the defense must fail.

The purpose of the doctrine of election of remedies is to prevent double redress of a single wrong. *Smith v. Oil Corp.*, 239 N.C. 360, 79 S.E. 2d 880 (1954). This can be achieved either by reducing plaintiff's award in tort by the amount of benefits already received or by granting subrogation to the employer's compensation insurance carrier. *Cf.* N.C. Gen. Stat. § 97-10.2 (1979 & Cum. Supp. 1983). The result thus obtained would be a more equitable one than forcing an employee who believes in good faith that he was injured by the intentional misconduct of his employer to forego his compensation claim in order to maintain his common law claim. An injured employee having financial difficulties would be likely to accept workers' compensation benefits and forego a valid tort claim because he would have no real alternative. Such a policy would not serve to discourage intentional employer misconduct. Finally, the doctrine of election of remedies presupposes a "choice" between one or more inconsistent remedies. *NASCAR, Inc. v. Midkiff*, 246 N.C. 409, 98 S.E. 2d 468 (1957). An employee in severe economic straits who makes a decision based solely on the exigencies of his immediate situation cannot be considered as having freely "chosen" one remedy over another.

In summary, because the instant case involves a genuine issue of material fact as to defendant's intent, I find summary judgment to have been inappropriate.

Justices EXUM and FRYE join in this dissenting opinion.