SUSIE MAE WOODSON, Administratrix of the Estate of Thomas Alfred Sprouse, Deceased v. NEAL MORRIS ROWLAND; MORRIS ROWLAND UTILITY, INC.; DAVIDSON & JONES, INC.; and PINNACLE ONE ASSOCIATES, a North Carolina Partnership

No. 8814SC148

(Filed 15 November 1988)

**1. Master and Servant § 87— workers' compensation—exclusivity of remedy**

Plaintiff's remedy was limited to the Workers' Compensation Act in an action arising from a cave-in at a construction site where plaintiff alleged that the conduct of her decedent's employer was so grossly negligent as to be equivalent to an intentional tort. Allowing a suit by an employee against his employer, even for gross, willful and wanton negligence, would skew the balance of interests inherent in the Workers' Compensation Act. *Pleasant v. Johnson*, 312 N.C. 710, involved a claim between co-employees.

**2. Corporations § 1.1— suit against co-employee—co-employee corporate alter ego**

In an action arising from a construction cave-in, plaintiff could not sue her decedent's co-employee individually in tort where the co-employee was the sole shareholder in the construction company and was the alter ego of the corporate employer. The individual plaintiff must be given the same immunity for negligence actions that is granted to employers pursuant to the Workers' Compensation Act. N.C.G.S. § 97-10.1.

**3. Master and Servant § 21.1— trench excavation—not inherently dangerous**

The trial court properly granted summary judgment for defendant general contractor and defendant project owner in a negligence action arising from a construction cave-in arising from the subcontractor's failure to comply with appropriate OSHA regulations for trench work where the plaintiff alleged that the general contractor and project owner were liable under the doctrine of

non-delegable duties because trench excavation is inherently dangerous. Trench excavation is common on most construction projects and is not especially hazardous when done properly; the injury here arose from a danger collaterally created by the independent negligence of the subcontractor.

**4. Master and Servant § 21 — construction cave-in — employee of subcontractor killed — summary judgment for general contractor proper**

   In an action arising from a construction cave-in, summary judgment was properly granted for defendant general contractor where plaintiff, whose decedent was an employee of the subcontractor, was alleging liability based on negligent hiring of the subcontractor. A general contractor does not owe a duty of care to the employees of his independent contractor to terminate the relationship with the independent contractor even where, as here, the principal knows or should have known of negligence on the part of the independent contractor which could cause injury to the independent contractor's employees.

   Judge PHILLIPS concurring in part and dissenting in part.

APPEAL by defendants from *Barnette, Judge.* Orders entered 14 September 1987, 16 September 1987, 9 November 1987, and 9 December 1987 in Superior Court, DURHAM County. Heard in the Court of Appeals 6 September 1988.

Plaintiff administratrix brings this action pursuant to G.S. 28A-18-2 to recover compensatory and punitive damages in the death of Thomas Alfred Sprouse (Sprouse). Sprouse died on 4 August 1985 as the result of a cave-in at a construction site where he was working laying sewer pipe in a trench. The trench in which Sprouse was working was neither braced nor shored to prevent a cave-in, a violation of federal occupational safety regulations.

Sprouse worked as a pipe layer for defendant Morris Rowland Utility, Inc. (Rowland Utility). Defendant Neal Morris Rowland (Rowland) is the president and sole shareholder of Rowland Utility. At the time of Sprouse's death Rowland Utility was a subcontractor for defendant Davidson & Jones, Inc. (D & J). D & J was the general contractor for defendant Pinnacle One Associates (Pinnacle).

After defendants answered, each defendant moved for summary judgment. In separate orders the trial court granted summary judgment for all of the defendants, including each of plaintiff's two claims against D & J. Plaintiff appeals.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Norman B. Smith and Bryan E. Lessley; John T. Manning for plaintiff-appellant.*

*Spears, Barnes, Baker, Hoof & Wainio, by J. Bruce Hoof and Mark A. Scruggs; Poyner & Spruill, by John L. Shaw, for Neal Morris Rowland and Morris Rowland Utility, Inc., defendant-appellees.*

*Smith Helms Mulliss & Moore, by L. D. Simmons, II, for Davidson & Jones, Inc., defendant-appellee.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Grady S. Patterson, Jr. and David H. Batten, for Pinnacle One Associates, defendant-appellee.*

EAGLES, Judge.

Plaintiff presents four issues on appeal. She first argues that Rowland Utility's actions in violating certain Occupational Safety and Health Administration (OSHA) safety regulations were so grossly negligent as to amount to an intentional assault on her decedent. She next argues that Rowland's individual actions were those of a co-employee rather than Sprouse's employer. She further contends that both D & J and Pinnacle breached a nondelegable duty by allowing Rowland Utility's negligence in failing to maintain a safe work place while performing an inherently dangerous activity. Plaintiff also alleges that D & J negligently hired and retained Rowland Utility as its subcontractor. Based on the record before us, we disagree and affirm.

I

[1] Plaintiff first attempts to overcome the exclusivity provision of the North Carolina Workers' Compensation Act (Act), G.S. 97-10.1. She argues that Rowland Utility's gross and wanton negligence amounts to intentional conduct. Plaintiff recognizes that our long-standing precedents prevent an employee covered by the Act from bringing an action against his employer for ordinary negligence. *Hicks v. Guilford County,* 267 N.C. 364, 148 S.E. 2d 240 (1966). On the other hand, the Act does not immunize an employer or a co-employee for his intentional torts. *Daniels v. Swofford,* 55 N.C. App. 555, 286 S.E. 2d 582 (1982). Additionally, our Supreme Court has allowed an employee injured by the will-

ful, wanton, and reckless negligence of a co-employee on the job to sue the co-employee for damages. *Pleasant v. Johnson,* 312 N.C. 710, 325 S.E. 2d 244 (1985).

G.S. 97-10.1 provides that

[i]f the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.

In her complaint plaintiff admits that her decedent was an employee of Rowland Utility and that he was acting within the course and scope of his duties at the time of his death. However, plaintiff argues that because Rowland Utility's conduct was so grossly negligent as to be equivalent to an intentional tort, plaintiff's remedy is not limited to a claim for workers' compensation benefits under the Act.

Defendants argue that plaintiff has chosen her remedy by filing a claim for workers' compensation benefits. They argue that the mere filing of a claim is an election of remedies which precludes this action for wrongful death. We reject defendant's contention that plaintiff has elected her remedy merely by filing her claim with the Industrial Commission without more. *Freeman v. SCM Corporation,* 311 N.C. 294, 316 S.E. 2d 81 (1984) (per curiam); *see also McAllister v. Cone Mills Corp.,* 88 N.C. App. 577, 364 S.E. 2d 186 (1988); *Stack v. Mecklenburg County,* 86 N.C. App. 550, 359 S.E. 2d 16, *disc. rev. denied,* 321 N.C. 121, 361 S.E. 2d 597 (1987). However, upon a careful review of the Act and the explanatory case law we conclude that the employer's conduct, though grossly negligent, was not such that it would prevent application of G.S. 97-10.1.

## A

Our courts have recognized a general exception to the Act's exclusivity provision when an employer intentionally injures his employee. *Daniels* at 560, 286 S.E. 2d at 585. Professor Larson explains the rationale for this exception by stating that Workers' Compensation Acts are designed to protect employers for dam-

ages resulting from *accidents. See* 2A Larson, *The Law of Workmen's Compensation* Section 68.11 (1988) (hereinafter cited as Larson). Intentional torts are beyond the scope of the Act.

Plaintiff relies on our Supreme Court's decision in *Pleasant* which stated that "willful, wanton and reckless negligence should also be treated as an intentional injury for purposes of our Workers' Compensation Act." *Pleasant* at 715, 325 S.E. 2d at 248. However, *Pleasant* involves a personal injury claim between co-employees and does not decide whether an employer could be sued by an employee for grossly negligent acts. *Id.* at 717, 325 S.E. 2d at 250. Accordingly, *Pleasant* does not control here.

The Act assures employees compensation for *accidental* work related injuries. *Id.* at 712, 325 S.E. 2d at 246. The Act features a balance of benefits for rights where "the employee and his dependents give up their common law right to sue the employer for negligence in exchange for limited but assured benefits." *Id.* The Act's exclusivity provision maintains the balance. Larson, Section 68.15.

In holding co-employees liable for willful, reckless and wanton acts, the *Pleasant* court pointed out that

[s]ince the negligent co-employee is neither required to participate in the defense of the compensation claim nor contribute to the award, he is not unduly prejudiced by permitting the injured employee to sue him after receiving benefits under the Act. Furthermore, when an employee who receives benefits under the Act is awarded a judgment against a co-worker, any amount obtained will be disbursed according to the provisions of N.C.G.S. 97-10.2 and may reduce the burden otherwise placed upon an innocent employer or insurer.

*Id.* at 717, 325 S.E. 2d at 249-250. Significantly, those factors insured that the delicate balance established by the Act was not disturbed. Here, those considerations are not present. To allow a suit by an employee against his employer, even for gross, willful and wanton negligence, would skew the balance of interests inherent in our Workers' Compensation Act. Changes in the Act's delicate balance of interests is more properly a legislative prerogative than a judicial function. Accordingly, we hold that the Act bars an employee's suit against his employer for injuries caused on the job by the employer's grossly negligent acts.

B

In *Freeman v. SCM Corporation*, 66 N.C. App. 341, 311 S.E. 2d 75, *aff'd*, 311 N.C. 294, 316 S.E. 2d 81 (1984), our court held, in part, that because plaintiff employee had received workers' compensation benefits he could no longer bring a tort action against his employer. The Supreme Court affirmed in a *per curiam* opinion. The Supreme Court wrote specifically "to make it abundantly clear that in fact plaintiff had no 'selection' as to the appropriate avenue of recovery for injuries." *Freeman v. SCM Corporation*, 311 N.C. 294, 296, 316 S.E. 2d 81, 82 (1984). The court concluded by stating that as long as the employee was covered by the Workers' Compensation Act, he must make any negligence claims against his employer before the Industrial Commission.

Most recently, in *Barrino v. Radiator Specialty Co.*, 315 N.C. 500, 340 S.E. 2d 295 (1986), a divided Supreme Court held that an employee who had received workers' compensation benefits could not sue his employer in the civil courts for grossly negligent conduct. Justice Billings, joined by Justice Mitchell, concurred separately but ruled against plaintiff's action relying on the fact that plaintiff had elected his remedy by accepting workers' compensation benefits. Three justices dissented.

In *Stack v. Mecklenburg County, supra*, we attempted to harmonize these two positions. We held that both *Freeman* and *Barrino* mandate that once coverage under the Act is established, the plaintiff employee could not bring an independent negligence action against the employer.

Here the evidence shows that plaintiff's decedent, Sprouse, is an employee covered under the Act. Therefore, plaintiff may not bring an action for negligence against Sprouse's employer. Plaintiff had no right to select a remedy other than a workers' compensation claim.

Whether plaintiff filed a claim or actually received workers' compensation benefits is irrelevant here. Plaintiff's exclusive remedy as against the employer was to pursue her claim under the Act and receive the workers' compensation benefits allowed by law.

## II

[2]   Plaintiff argues that Rowland, individually, was grossly negligent in failing to ensure the work site complied with North Carolina Department of Labor and federal OSHA regulations and that the failure resulted in her decedent's death. She further claims that when Rowland made these decisions, he was acting as Sprouse's co-employee, not his employer. Rowland argues that he is the corporate alter ego and is, like the corporate employer, immune from a negligence action.

Rowland contends, without contradiction, that he is the sole shareholder of Rowland Utility. The record here shows that Rowland made all of the decisions concerning the corporation including which jobs to bid, who to hire, and salaries. Because Rowland Utility had "no separate mind, will or existence of its own and [was] but a business conduit for its principal," we hold that Neal Morris Rowland is the alter ego of the corporate employer, Morris Rowland Utility, Inc. *J. M. Thompson Co. v. Doral Manufacturing Co.*, 72 N.C. App. 419, 426, 324 S.E. 2d 909, 914, *disc. rev. denied*, 313 N.C. 602, 330 S.E. 2d 611 (1985). Accordingly, Morris Rowland must be given the same immunity from negligence actions that is granted employers pursuant to G.S. 97-10.1. Larson, Section 72.13. To do otherwise would effectively negate the exclusivity provision of the Act as to small businesses. We hold that a plaintiff, representing a deceased employee, may not sue her decedent's co-employee individually, in tort, when the co-employee is the corporate employer's alter ego.

## III

[3]   Plaintiff next argues that D & J and Pinnacle are vicariously liable for Rowland Utility's negligence under the doctrine of non-delegable duties. Plaintiff contends that trench excavation is inherently dangerous and that a general contractor and owner may not escape liability for injuries arising from inherently dangerous work by contracting with a subcontractor.

Generally, an employer is not liable for the negligence of an independent contractor. *Rivenbark v. Construction Co.*, 14 N.C. App. 609, 188 S.E. 2d 747, *cert. denied*, 281 N.C. 623, 190 S.E. 2d 471 (1972). An exception to the rule occurs when an activity contracted for is inherently dangerous. The inherently dangerous ex-

ception "imposes liability on an employer for the negligent torts of independent contractors performing, for the employer, an activity which would result in harmful consequences unless proper precautions are taken." *Dietz v. Jackson*, 57 N.C. App. 275, 279, 291 S.E. 2d 282, 285 (1982). Whether an activity is inherently dangerous is a question of law for the trial court. *Id.* at 280, 291 S.E. 2d at 286.

Our Supreme Court has ruled that an inherently dangerous activity is one where there is "a recognizable and substantial danger inherent in the work, *as distinguished from a danger collaterally created by the independent negligence of the contractor*, which latter might take place on a job itself involving no inherent danger." (Emphasis added.) *Evans v. Rockingham Homes, Inc.*, 220 N.C. 253, 259, 17 S.E. 2d 125, 128 (1941).

We find that trench excavation work of this nature is not an inherently dangerous activity. Trench excavation work is common on most construction projects. When done properly, it is not especially hazardous. Rowland Utility's failure to comply with the appropriate OSHA regulations for trench work caused the trench to collapse. Proper shoring or sloping of the trench walls would have prevented any injuries from occurring. We hold that the injury here arose "from a danger collaterally created by the independent negligence of the contractor." *Id.* Accordingly, summary judgment in favor of Pinnacle and D & J on the issue of an inherently dangerous activity was correct.

IV

[4] By plaintiff's final assignment of error she argues that D & J is directly liable to her decedent for the negligent hiring and retention of Rowland Utility as a subcontractor. D & J contends that plaintiff should not be allowed to bring this claim because Sprouse was not D & J's employee, but rather was Rowland Utility's employee. D & J next argues that even if plaintiff can bring this action, D & J was not negligent in hiring or retaining Rowland Utility. In essence, plaintiff asks us to permit tort recovery by employees of independent subcontractors against a general contractor based upon negligence of their employer, the independent subcontractor. We reject plaintiff's argument and affirm the trial court's judgment.

## A

Plaintiff cites two North Carolina cases in support of her claim based on negligent hiring. Both are distinguishable from the instant case. In *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972), the Supreme Court held that a motel guest could recover damages for injuries received when an electric water heater exploded. The innkeeper had earlier hired a plumber to repair the water heater. The court stated that whether the innkeeper was negligent in hiring a plumber rather than an electrician was a jury question. The ruling, however, was premised on the innkeeper's nondelegable duty to provide for the protection of his guests. There is no such duty in the instant case.

In *Dietz*, at 278, 291 S.E. 2d at 285, we stated that "a general contractor may be subject to liability for an injury done to a plaintiff as a proximate result of the general contractor's negligence in hiring an independent contractor to perform construction work." The plaintiff in *Dietz* was the employee of an independent subcontractor. The employee sued the general contractor for the negligent hiring of a different subcontractor, not his employer. *Dietz* is distinguishable on its facts from the present case.

As in any other negligence case, to prevail here the plaintiff must show a legal duty, a breach of the duty, proximate cause, and damages. *Petty v. Print Works*, 243 N.C. 292, 90 S.E. 2d 717 (1956). We hold that under these circumstances defendant D & J owed no legal duty to Sprouse based on D & J's negligent hiring of Sprouse's employer. Accordingly, the trial court's entry of summary judgment on the claim based on negligent hiring was correct.

To allow the employee of a subcontractor to recover against the general contractor or developer for its negligent hiring of the subcontractor would circumvent the exclusivity provisions of the Workers' Compensation Act and, further, would encourage general contractors to avoid hiring independent contractors. Here, if plaintiff's decedent had been the general contractor's own employee, the general contractor's liability would be limited by the Workers' Compensation Act. It seems incongruous to allow an employee of a subcontractor to bring his employer's general contractor into court and question the general contractor's hiring

decision in hiring the employer subcontractor. Plaintiff's theory rests on the proposition that when the general contractor hired a subcontractor for a job, the general contractor then "owed [the decedent] a duty to protect him from the negligence of his own employer." *Chapman v. Black*, 49 Wash. App. 94, 104, 741 P. 2d 998, 1004 (1987). We are not persuaded by this argument and believe that such a broadening of tort liability is a legislative issue.

### B

Plaintiff argues that a genuine issue of material fact exists in her claim of negligent retention of Rowland Utility as D & J's subcontractor. She contends that D & J, in the exercise of reasonable care, knew or should have known that Rowland Utility was violating state and federal safety practices and, therefore, should have terminated Rowland Utility's contract. We disagree and affirm the trial court's entry of summary judgment on plaintiff's claim of negligent retention.

Our courts have recognized that an employer may be held liable for his negligent retention of an incompetent employee or for retaining an employee whose wrongful conduct causes injury to another. *Pleasants v. Barnes*, 221 N.C. 173, 19 S.E. 2d 627 (1942); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E. 2d 116, *disc. rev. denied*, 317 N.C. 334, 346 S.E. 2d 140 (1986). However, in each of these cases the relationship involved was employer-employee, rather than principal-independent contractor as in the instant case.

There are significant differences between the relationships of employer-employee and principal-independent contractor. One court has aptly noted the primary distinction is that:

> the principal does not supervise the details of the independent contractor's work and therefore is not in a good position to prevent negligent performance, whereas the essence of the contractual relationship known as employment is that the employee surrenders to the employer the right to direct the details of his work, in exchange for receiving a wage.

*Anderson v. Marathon Petroleum Co.*, 801 F. 2d 936, 938 (7th Cir. 1986). The amount of control an employer has over his employee is significantly greater than the control a principal may exert over an independent contractor.

The evidence here shows that Lynn Craig, an operator and on-site crew supervisor for D & J, observed Rowland Utility working on the job the day before the accident. By deposition Craig testified that the project plans called for trenches eighteen to twenty feet deep in which to lay the pipes. He further testified that he would not allow the D & J crew he supervised to work in the trench until Rowland Utility supplied Craig with a trench box. A trench box is a shell-like device sometimes used to ensure a trench worker's safety from cave-in when working in trenches deeper than five feet. Craig personally observed that Rowland Utility's employees were not using a trench box but were attempting to slope the trench walls. Craig also stated that he would have sloped the trench walls more than Rowland Utility did before he would have allowed his men to work in it. Neither Craig nor anyone else from D & J observed Rowland Utility's work on the day of the accident.

On this record, we hold here that a general contractor does not owe a duty of due care to the employees of his independent contractor to terminate the general contractor's relationship with the independent contractor even where, as here, the principal knows or should have known of negligence on the part of the independent contractor which could cause injury to the independent contractor's employees.

Affirmed.

Judge PARKER concurs.

Judge PHILLIPS concurs in part and dissents in part.

Judge PHILLIPS concurring in part and dissenting in part.

Though I agree that under various decisions of our Supreme Court the claims against the decedent's employer and the individual defendant were properly dismissed, the opinion with respect to these claims, in my view, is incorrectly and unduly broad in several respects. *First*, it erroneously broadens the alter ego doctrine, a device not for escaping individual liability but establishing it; and the action against the individual defendant was properly dismissed not just because he owns and operates the corporation, but because the duty he allegedly violated was not

Woodson v. Rowland

one that one employee owed to another but was the nondelegable duty the corporate employer owed the decedent to provide him a safe working place. 2A A. Larson, Workmen's Compensation Law Sec. 72.13, pp. 14-81 to 14-84 (1988). *Second,* nor would holding Rowland individually liable, if he had violated an employee's duty, negate the exclusivity provision of the act, as the majority supposes; for the exclusivity provision, as G.S. 97-10.1 explicitly provides, applies only to an employee's claim against his employer and holding that it automatically applies to any third party, whoever it may be, is without legislative authority. *Third,* holding that working a man in a narrow dirt ditch 18 feet deep is not inherently dangerous is contrary to reality, in my opinion; and the legal test applied to this question, despite its origin, is meaningless legal jargon.

But in my view the dismissal of plaintiff's action against the general contractor, Davidson & Jones, was erroneous. The majority holding that notwithstanding the contractor's direct knowledge, through its on-the-site supervisor, that the subcontractor was recklessly exposing its employees to death or serious injury by working them in an 18 foot trench that was unshored, inadequately sloped and not equipped with a trench box, it had no duty to take steps to eliminate that hazard is a view of the law I do not share. That a general contractor ordinarily has no general duty to protect the employees of its independent contractor against its neglect of which it knows nothing is sound law, but it does not apply to these circumstances. As the occupier of the construction site, defendant Davidson & Jones had a duty to warn even nontrespassing strangers as to dangers in the premises that it knew of and the contractor knew about the hazardous ditch and according to the supervisor would not have permitted its employees to work in it. But it was more than a mere occupier of land, as all the construction work, including that farmed out to independent contractors, was being done for it. Having direct knowledge of an imminent hazard to the life of a worker on its project, the efficiency of the construction, its own interest and that of the subcontractor, and the law's concern for human life required that it take steps at once to eliminate that hazard. No reasonable general contractor knowing of such a hazard to a subcontractor's employee—whether it was a potentially crumbling ditch, an insecure hoist, inefficient bolting and riveting of steel framing, or an unin-

sulated line charged with electricity—would idly permit the hazard to remain unabated to the danger of workers on its project.