LASHANDA SHAW, Plaintiff
v.
THE GOODYEAR TIRE & RUBBER CO., Defendants

No. COA12-338

Filed 15 January 2013

**Jurisdiction—subject matter—negligent infliction of emotional distress—Workers' Compensation Act—exclusivity provisions**

The trial court lacked subject matter jurisdiction over plaintiff's negligent infliction of emotional distress claim caused by defendant's willful or wanton negligence because the exclusivity provision of the Workers' Compensation Act gives the Industrial Commission exclusive jurisdiction over this type of claim. Plaintiff's claim fell within the purview of the Worker's Compensation Act but was not enough to sustain a *Woodson* claim and thereby qualify as an exception to the exclusivity provisions of the Workers' Compensation Act.

Appeal by defendant from judgment entered 8 April 2011 by Judge Mary Ann Tally in Superior Court, Cumberland County. Heard in the Court of Appeals 29 November 2012.

*Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harold L. Kennedy, III and Harvey L. Kennedy, for plaintiff-appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Julia C. Ambrose, John W. Ormand, III and Patricia W. Goodson, for defendant-appellant.*

*Womble Carlyle Sandridge & Rice, LLP, by Burley B. Mitchell, Jr., for Amicus Curiae North Carolina Chamber.*

STROUD, Judge.

This case presents in a unique procedural posture, with defendant's appeal from a $450,000.00 jury award to plaintiff for her claim of negligent infliction of emotional distress, arguing, *inter alia*, that the trial court lacked subject matter jurisdiction. For the following reasons, we agree and vacate the judgment of the trial court.

## I. Background

This case is in an unusual procedural posture because it comes to us with facts that have already been determined by a jury. Because the only issue addressed by this Court is subject matter jurisdiction, we recite just the background we deem pertinent for an understanding of the jurisdictional issue before us. In 2007, defendant hired plaintiff "as an Area Manager." During the course of plaintiff's employment, she complained that she was being harassed by her male supervisor. Plaintiff's supervisor's behavior toward plaintiff was obnoxious and rude; the harassment was verbal and involved some forms of intimidation but did not involve anything of a sexual nature nor did it involve any physical contact with plaintiff. Despite plaintiff's complaints to the appropriate personnel, plaintiff's supervisor remained in his position, where he continued to harass her, and eventually, defendant terminated plaintiff's employment. On 13 January 2010, plaintiff filed a verified amended complaint claiming (1) wrongful discharge, (2) violation of Retaliatory Employment Discrimination Act ("REDA"), (3) tortious interference with contractual rights, (4) intentional infliction of emotional distress, and (5) negligent infliction of emotional distress ("NIED").[1]

On or about 27 August 2010, plaintiff voluntarily dismissed her second claim, the REDA claim. On 8 November 2010, defendant filed a motion for summary judgment. On 21 December 2010, the trial court filed an order regarding defendant's motion for summary judgment and dismissed plaintiff's third and fourth claims for tortious interference with contractual rights and intentional infliction of emotional

---

1. Plaintiff's verified amended complaint also included Mr. Doug Swain, her former supervisor, as a defendant. Furthermore, on 7 October 2010, plaintiff filed a motion to amend her complaint to add a claim for assault. On 15 November 2010, the trial court dismissed Mr. Swain from this lawsuit and denied plaintiff's motion to amend her complaint. Plaintiff has not appealed the 15 November 2010 order.

distress. Accordingly, only plaintiff's first and fifth claims for wrong-ful discharge and NIED remained at the time of trial. The allegations central to both plaintiff's wrongful discharge and NIED claims were that plaintiff complained to defendant about the harassment by her supervisor; defendant negligently handled plaintiff's complaint about the harassment; and defendant's negligence caused plaintiff's emo-tional distress and eventually led to her wrongful discharge.

Several specific issues were submitted to the jury, and on appeal neither party challenges these issues as submitted to the jury. After a lengthy trial, the jury entered the following verdict:

ISSUE ONE:

Did the defendant intentionally discriminate against the plaintiff because of her race or sex or both when the defendant fired the plaintiff?

[The jury answered "No[.]"]

ISSUE TWO:

Did the defendant retaliate against the plaintiff by firing her for her making a complaint of discrimination based upon her race or sex or both?

[The jury answered "Yes[.]"]

ISSUE THREE:

Would the defendant have terminated the plaintiff in the absence of race or sex discrimination and/or retali-ation for her complaints of discrimination?

YOU WILL ANSWER THIS ISSUE ONLY IF YOU HAVE ANSWERED ISSUES 1 OR 2 "YES["] IN FAVOR OF THE PLAINTIFF.

[The jury answered "Yes[.]"]

ISSUE FOUR:

Did the plaintiff suffer severe emotional distress as a proximate result of the negligence of the defendant?

[The jury answered "Yes[.]"]

**SHAW v. GOODYEAR TIRE & RUBBER CO.**

[225 N.C. App. 90 (2013)]

ISSUE FIVE:

What amount of damages is the plaintiff entitled to recover?

YOU ARE TO ANSWER THIS ISSUE ONLY IF YOU HAVE ANSWERED ISSUES 1 OR 2 "YES" IN FAVOR OF PLAINTIFF AND ANSWERED ISSUE 3 "NO" OR IF YOU HAVE ANSWERED ISSUE 4 IN FAVOR OF THE PLAINTIFF.

[The jury answered "$450,000.00[.]"]

The jury verdict sheet required that the jury answer Issue Five only in either of two scenarios: (1) "IF [IT HAD] ANSWERED ISSUES 1 OR 2 'YES' IN FAVOR OF PLAINTIFF AND ANSWERED ISSUE 3 'NO' " or (2) "IF [IT HAD] ANSWERED ISSUE 4 IN FAVOR OF THE PLAINTIFF." The jury answered Issue Two "Yes[,]" but answered Issue Three "No[.]" Accordingly, the jury could not award plaintiff a verdict based upon the first two issues.[2] The jury answered Issue Four "Yes[,]" and thus the award of $450,000.00 was based solely upon Issue Four regarding plaintiff's "severe emotional distress as a proximate result of the negligence of defendant." In summary, the jury did not award plaintiff any damages for her wrongful discharge claim but only for her NIED claim.

The jury then considered the issue of punitive damages. The jury entered the following verdict as to punitive damages:

ISSUE ONE:

IS THE DFENDANT LIABLE TO THE PLAINTIFF FOR PUNITIVE DAMAGES FOR NEGLIGENT INFLIC-TION OF SEVERE EMOTIONAL DISTRESS?

[The jury answered "Yes[.]"]

ISSUE TWO:

WHAT AMOUNT OF PUNITIVE DAMAGES, IF ANY, DOES THE JURY IN ITS DISCRETION AWARD TO THE PLAINTIFF?

---

2. At this point, the verdict was essentially a dogfall. "This colloquialism is derived from wrestling where it signifies a draw or tie." *Raybon v. Reimers*, 226 S.E.2d 620, 621 n.1, (Ga. Ct. App. 1976).

(YOU ARE TO ANSWER THIS ISSUE ONLY IF YOU HAVE ANSWERED THE FIRST "YES" IN FAVOR OF THE PLAINTIFF)

[The jury answered "None[.]"]

On 8 April 2011, the trial court entered judgment consistent with the jury's verdict sheets and awarded plaintiff compensatory damages of $450,000.00. Defendant appeals.

## II.  Jurisdiction

Defendant argues that "the trial court lacked subject matter jurisdiction over plaintiff's NIED claim, which is barred by the exclusivity provision of the Workers' Compensation Act." (Original in all caps.) "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010). It is important to note that the only issue on appeal is the trial court's jurisdiction as to plaintiff's NIED claim, and thus we need not consider any of plaintiff's other claims. Furthermore, the relevant facts have already been determined by the jury, so our analysis is based upon the jury's verdict and not the allegations or evidence of either party.

Here, the jury determined that "plaintiff suffer[ed] severe emotional distress as a proximate result of the negligence of the defendant" and awarded plaintiff $450,000.00 as compensation for that claim and that claim only. The jury further determined that defendant is "liable to the plaintiff for punitive damages for negligent infliction of severe emotional distress" but awarded no damages. (Original in all caps.) However, a finding of liability for punitive damages requires that the plaintiff prove "that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud. (2) Malice. (3) Willful or wanton conduct." N.C. Gen. Stat. § 1D-15(a) (2007). The jury was properly instructed on the requirements for a finding of liability for punitive damages as to willful or wanton conduct. Plaintiff proved "that the defendant [was] liable for compensatory damages" as is shown by the jury's compensatory damages award of $450,000.00. Accordingly, the issue before us is whether the trial court had jurisdiction over plaintiff's claim for NEID caused by defendant's willful or wanton negligence.[3]

---

3. We note that plaintiff's claim for NIED against defendant was based upon defendant's mishandling of her complaints about harassment by her supervisor; in

**SHAW v. GOODYEAR TIRE & RUBBER CO.**

[225 N.C. App. 90 (2013)]

## A. Willful and/or Wanton Negligence Defined

Here, the jury has already made the determination that defendant's negligence was "willful or wanton." "Willful negligence arises from the tortfeasor's deliberate breach of a legal duty owed to another, while wanton negligence is done of a wicked purpose or done needlessly, manifesting a reckless indifference to the rights of others." *Sloan v. Miller Building Corp.*, 128 N.C. App. 37, 43, 493 S.E.2d 460, 464 (1997) (citation, quotation marks, and ellipses omitted). "Wil[l]ful and wanton negligence is conduct which shows either a deliberate intention to harm, or an utter indifference to, or conscious disregard for, the rights or safety of others. Carelessness and recklessness, though more than ordinary negligence, is less than willful[l]ness or wantonness." *Siders v. Gibbs*, 31 N.C. App. 481, 485, 229 S.E.2d 811, 814 (1976) (citation and quotation marks omitted). Here, defendant argues that the trial court did not have jurisdiction over plaintiff's NIED claim caused by defendant's willful and wanton negligence because the Industrial Commission has exclusive jurisdiction over this type of claim.

## B. The Exclusivity Provisions

N.C. Gen. Stat. § 97-9 provides,

> Every employer subject to the compensation provisions of this Article shall secure the payment of compensation to his employees in the manner hereinafter provided; and while such security remains in force, he or those conducting his business shall only be liable to any employee for personal injury or death by accident to the extent and in the manner herein specified.

N.C. Gen. Stat. § 97-9 (2007).

N.C. Gen. Stat. § 97-10.1, provides,

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative

---

other words, the cause of defendant's liability was not plaintiff's supervisor's harassment *per se*, but the fact that defendant mishandled plaintiff's complaints about her supervisor's harassment. Accordingly, cases in which claims are premised upon the actual harassment, be it sexual, physical or verbal, are of limited use in this case, as the determinative facts in this case do not concern harassment but instead the mishandling of harassment complaints.

shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.

N.C. Gen. Stat. § 97-10.1 (2007).

Thus, this Court and our Supreme Court have agreed that

[t]he [Workers' Compensation] Act provides that its remedies are the only remedies an employee has against his or her employer for claims covered by the Act. . . . *Even where the complaint alleges willful and wanton negligence and prays for punitive damages, the remedies under the Act are exclusive.* An employee cannot elect to pursue an alternate avenue of recovery, but is required to proceed under the Act with respect to compensable injuries.

*McAllister v. Cone Mills Corp.*, 88 N.C. App. 577, 580, 364 S.E.2d 186, 188 (1988) (emphasis added) (citations omitted); *see Freeman v. SCM Corporation*, 311 N.C. 294, 295-96, 316 S.E.2d 81, 82 (1984) (The "plaintiff filed this action, alleging that her injuries were caused by the gross, willful and wanton negligence and by the intentional acts of defendant. . . . Since plaintiff was here covered by and subject to the provisions of the Workers' Compensation Act, her rights and remedies against defendant employer were determined by the Act and she was required to pursue them in the North Carolina Industrial Commission. She could not, in lieu of this avenue of recovery, institute a common law action against her employer in the civil courts of this State." (citation omitted)). Thus, the only ways in which plaintiff might avoid the exclusive jurisdiction of the Industrial Commission are (1) that her claim falls under an exception to the exclusivity provisions or (2) that her NIED claim was not "covered by the Act." *McAllister*, 88 N.C. App. at 580, 364 S.E.2d at 188. We consider both of these alternatives in turn.

C. *Woodson v. Rowland*

In 1991, our Supreme Court recognized one exception to the exclusivity provisions with the seminal case of *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). In *Woodson*, Mr. Thomas Sprouse was working in a trench "to lay sewer lines." 329 N.C. at 334, 407 S.E.2d at 225. The trench should have had a trench box, but did not in violation of the Occupational Safety and Health Act of North

Carolina. *Id.* at 335, 407 S.E.2d at 225. One foreman did not allow his men to work in the trench because of the dangers posed by the trench without a trench box. *Id.* Though a trench box was available on site, Mr. Sprouse's project supervisor, among others, decided not to use it; the trench collapsed and Mr. Sprouse was buried alive. *Id.* at 335-36, 407 S.E.2d at 225. Mr. Sprouse died as a result of the trench collapse and plaintiff, the administrator of Mr. Sprouse's estate, sued at the trial court but also

> filed a Workers' Compensation claim to meet the filing deadline for compensation claims. In order to avoid a judicial ruling that she had elected a workers' compensation remedy inconsistent with the civil remedies she presently seeks, plaintiff specifically requested that the Industrial Commission not hear her case until completion of th[e] action [before the trial court]. The Commission . . . complied with her request[.]

*Id.* at 336, 407 S.E.2d at 226. The defendant requested summary judgment and prevailed at both the trial level and before this Court. *Id.* Upon further appeal, the question pending before the Supreme Court was "whether the exclusivity provisions of the Workers' Compensation Act limit[ed] plaintiff's remedies to those provided by the Act." *Id.* at 334, 407 S.E.2d at 224.

The Court then engaged in a thorough analysis of statutory provisions, our case law, and the case law of other jurisdictions reasoning that

> [i]n *Pleasant*, which involved co-employee liability for recklessly operating a motor vehicle, we concluded that injury to another resulting from willful, wanton and reckless negligence should also be treated as an intentional injury for purposes of our Workers' Compensation Act. The *Pleasant* Court expressly refused to consider whether the same rationale would apply to employer misconduct. Nonetheless, *Pleasant* equated willful, wanton and reckless misconduct with intentional injury for Workers' Compensation purposes.
>
> The plaintiff in *Barrino v. Radiator Specialty Co.*, 315 N.C. 500, 340 S.E.2d 295 (1986), urged us to extend the Pleasant rationale to injuries caused by an employer's willful and wanton misconduct. The plaintiff, administrator of the estate of the deceased employee, alleged in part that the decedent died as a

result of severe burns and other injuries caused by an explosion and fire in the employer's plant. On the employer's motion for summary judgment, the plaintiff's forecast of evidence, which included the allegations of the complaint, tended to show as follows: the employer utilized ignitable concentrations of flammable gasses and volatile flammable liquids at its plant, violated OSHANC regulations in the use of these substances, covered meters and turned off alarms designed to detect and warn of dangerous levels of explosive gasses and vapors—all of which resulted in the explosion and fire which caused the employee's death.

A majority of this Court in *Barrino* refused to extend the *Pleasant* rationale to employer conduct, but only two of the four majority justices expressed the view that the plaintiff's injuries were solely by accident and that the remedies provided by the Act were exclusive. These two justices relied in part on *Freeman v. SCM Corporation*, 311 N.C. 294, 316 S.E.2d 81 (1984), a *per curiam* opinion which concluded that a complaint alleging injuries caused by the willful and wanton negligence of an employer should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure because exclusive jurisdiction rested under the Workers' Compensation Act with the Industrial Commission.

The other two justices in the *Barrino* majority concurred on the ground that the plaintiff, having accepted workers' compensation benefits, was thereby barred from bringing a civil suit.

The three remaining justices dissented on the ground that the plaintiff's forecast of evidence was sufficient to raise a genuine issue of material fact as to whether the defendant-employer's conduct embodies a degree of culpability beyond negligence so as to allow the plaintiff to maintain a civil action. Believing the plaintiff's forecast of evidence was sufficient to survive summary judgment on the question of whether the employer was guilty of an intentional tort, the *Barrino* dissenters said:

> As Prosser states: Intent is broader than a desire to bring about physical results. It must

> extend not only to those consequences which are
> desired, but also to those which the actor believes
> are substantially certain to follow from what he
> does. The death of Lora Ann Barrino the employee
> was, at the very least, substantially certain
> to occur given defendants' deliberate failure to
> observe even basic safety laws.

As discussed in a subsequent portion of this opinion, the
dissenters also concluded that the plaintiff was not put
to an election of remedies. They thus would have
allowed the plaintiff's common law intentional tort
claim to proceed to trial on the theory that the defend-
ant intentionally engaged in conduct knowing it was
substantially certain to cause serious injury or death.
They would also have allowed the plaintiff to pursue
both a workers' compensation claim and a civil action.

Today we adopt the views of the *Barrino* dissent.
*We hold that when an employer intentionally engages
in misconduct knowing it is substantially certain to
cause serious injury or death to employees and an
employee is injured or killed by that misconduct, that
employee, or the personal representative of the estate
in case of death, may pursue a civil action against the
employer.* Such misconduct is tantamount to an inten-
tional tort, and civil actions based thereon are not
barred by the exclusivity provisions of the Act. Because,
as also discussed in a subsequent portion of this opin-
ion, the injury or death caused by such misconduct is
nonetheless the result of an accident under the Act,
workers' compensation claims may also be pursued.
There may, however, only be one recovery. We believe
this holding conforms with general legal principles and
is true to the legislative intent when considered in light
of the Act's underlying purposes.

*Id.* at 339-41, 407 S.E.2d at 227-28 (emphasis added) (citations, quota-
tion marks, ellipses, and brackets omitted). The Court further
explained,

> Our holding is consistent with general concepts of
> tort liability outside the workers' compensation con-
> text. The gradations of tortious conduct can best be
> understood as a continuum. The most aggravated con-

duct is where the actor actually intends the probable consequences of his conduct. One who intentionally engages in conduct knowing that particular results are substantially certain to follow also intends the results for purposes of tort liability. Intent is broader than a desire to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does. This is the doctrine of constructive intent. As the probability that a certain consequence will follow decreases, and becomes less than substantially certain, the actor's conduct loses the character of intent, and becomes mere recklessness. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence.

Prosser discusses the tortious conduct continuum:

Lying between intent to do harm, which includes proceeding with knowledge that the harm is substantially certain to occur, and the mere unreasonable risk of harm to another involved in ordinary negligence, there is a penumbra of what has been called quasi-intent. To this area, the words willful, wanton, or reckless, are customarily applied; and sometimes, in a single sentence, all three.

*Id.* at 341, 407 S.E.2d at 228-29 (citations, quotation marks, ellipses, and brackets omitted).

D. *Woodson* Exception Noted But Not Applied

Cases subsequent to *Woodson* have noted its exception to the exclusivity provisions, but these cases have yet to satisfy *Woodson's* requirements:

Under the Workers' Compensation Act, an employee's remedies are exclusive as against the employer where the injury is caused by an accident arising out of and in the course of employment. Thus, the exclusivity provision of the Act precludes a claim for ordinary negligence, even when the employer's conduct constitutes willful or wanton negligence. However, an exception to this exclusivity exists for claims meeting the stringent proof standards of *Woodson*, 329 N.C. 330, 407 S.E.2d

222. *Woodson* permits a plaintiff to pursue both a workers' compensation suit and a civil suit against an employer in those narrowly limited cases where injury or death was the result of intentional conduct by an employer which the employer knew was substantially certain to cause serious injury or death. *Willful and wanton negligence alone is not enough to establish a Woodson claim*; a higher degree of negligence is required. The conduct must be so egregious as to be tantamount to an intentional tort.

*Wake County Hosp. Sys. v. Safety Nat. Casualty Corp.*, 127 N.C. App. 33, 40-41, 487 S.E.2d 789, 793 (emphasis added) (citations, quotation marks, ellipses, and brackets omitted) (rejecting *Woodson* exception for negligent hiring or retention claim where a woman was murdered by co-employee with a criminal record noting that "the only allegations contained in the complaint in the Crews lawsuit that could possibly be construed as asserting a *Woodson* claim were that the Hospital hired a laundry employee with a relatively minor criminal record, and failed to fire that employee even though it had knowledge that he had engaged in sexual relations with other hospital employees at work, knew that he had a violent temper, and had knowledge of his alleged but unproven altercations with female co-employees in which no one was injured. Though these allegations may be sufficient to allege that the Hospital was negligent in hiring and retaining Sexton, the allegations are insufficient to allege conduct on the part of the Hospital substantially certain to cause injury or death and, therefore, do not meet the stringent requirements of *Woodson*. Without a *Woodson* claim, workers' compensation is the only remedy available in this case; any other action is barred as a matter of law"), *disc. review denied*, 347 N.C. 410, 494 S.E.2d 600 (1997).

Specifically, regarding the issue of emotional distress, *Woodson* was again noted, but rejected where the plaintiff "allege[ed] that defendants failed to investigate [her co-employee's,] Fields'[,] application, and as a result he assaulted her during the robbery causing her severe emotional distress." *Caple v. Bullard Restaurants, Inc.*, 152 N.C. App. 421, 428, 567 S.E.2d 828, 833 (2002). This Court stated that

as in *Wake County Hosp. Sys.*, such conduct, at best, only shows that defendants were negligent in hiring and retaining Fields. It would still be insufficient to allege conduct on the part of defendants substantially certain

to cause injury or death and, therefore, does not meet
the stringent requirements of *Woodson.*

*Id.* (citation, quotation marks, and brackets omitted).

E.  *Woodson* Does Not Apply Here

While we recognize that plaintiff's claim was not stated as a
*Woodson* claim, based upon the jury's verdict and the issue raised by
defendant, we have no choice but to consider whether the trial court
could properly have had jurisdiction over plaintiff's NIED claim as a
*Woodson* claim. Yet this Court is unaware of a single litigant in any
case which has been subject to appellate review who has successfully
pursued a *Woodson* claim since the exception to the exclusivity pro-
visions was set out in 1991. *See Woodson,* 329 N.C. 330, 407 S.E.2d
222. As *Wake County Hosp. Sys.* stated, even under *Woodson,* "[w]ill-
ful and wanton negligence alone is not enough to establish a
*Woodson* claim; a higher degree of negligence is required. The
conduct must be so egregious as to be tantamount to an intentional
tort." 127 N.C. App. at 40, 487 S.E.2d at 793. Here, all the jury found
was willful and wanton negligence on the part of defendant. Although
plaintiff filed a complaint, an amended complaint, and attempted to
amend her complaint a second time, alleging nine total different
claims between the three documents, eight of the claims were regard-
ing intentional conduct, but plaintiff only actually prevailed on one
negligence claim. Accordingly, we conclude that the *Woodson* excep-
tion to the exclusivity provisions does not apply to plaintiff in
this case.

F.  Plaintiff's NIED Claim

We are thus left with a claim for NIED which occurred in plain-
tiff's workplace; so to determine if it was a claim which was under the
exclusive jurisdiction of the Industrial Commission, we must con-
sider if the claim falls within the purview of the Workers
Compensation Act. "In order for an injury to be compensable under
the Workers' Compensation Act, a claimant must prove: (1) that the
injury was caused by an accident; (2) that the injury arose out of the
employment; and (3) that the injury was sustained in the course of
employment." *Wake County Hosp. Sys.,* 127 N.C. App. at 38-39, 487
S.E.2d at 792. (citation, quotation marks, and brackets omitted).
North Carolina General Statute § 97-2(6) defines "[i]njury and per-
sonal injury" as "only injury by accident arising out of and in the
course of the employment, and shall not include a disease in any

**SHAW v. GOODYEAR TIRE & RUBBER CO.**

[225 N.C. App. 90 (2013)]

form, except where it results naturally and unavoidably from the accident." N.C. Gen. Stat. § 97-2(6) (2007). "Injury" includes mental injury. *Jordan v. Central Piedmont Community College,* 124 N.C. App. 112, 118-19, 476 S.E.2d 410, 414 (1996) ("While the claim in this case involves an injury by accident as opposed to an occupational disease, *we do not read or interpret the Act as limiting compensation for mental conditions to only occupational diseases, excluding mental injuries by accident.* As the Supreme Court in *Ruark* pointed out, our courts have recognized the compensability of mental injuries under tort law since the late nineteenth century. Furthermore, mental conditions have been acknowledged and compensated as occupational diseases under our Workers' Compensation Act. *We cannot conclude that mental injuries by accident are not covered under the Act when we have clearly awarded workers' compensation for mental conditions as occupational diseases.* Such a holding would lead to harsh results and would be incongruous in light of our well established history of compensating mental injuries under general principles of tort law." (emphasis added) (citation omitted)), *disc. review denied,* 345 N.C. 753, 485 S.E.2d 53 (1997). " 'Accident' under the Act means (1) an unlooked for and untoward event which is not expected or designed by the injured employee; (2) a result produced by a fortuitous cause." *Woodson,* 329 N.C. at 348, 407 S.E.2d at 233 (citations and quotation marks omitted).

> "Arising out of" the employment is construed to require that the injury be incurred because of a condition or risk created by the job. In other words, the basic question to answer when examining the arising out of requirement is whether the employment was a contributing cause of the injury. Our Supreme Court has held that, generally, an injury arises out of the employment when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment. When an injury cannot fairly be traced to the employment as a contributing proximate cause, or if it comes from a hazard to which the employee would have been equally exposed apart from the employment, or from the hazard common to others, it does not arise out of the employment.

*Mintz v. Verizon Wireless,* ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (Nov. 20, 2012) (No. COA12-306) (citations, quotation marks, and brackets omitted). "As used in the Workers' Compensation Act the phrase, 'in the course of the employment,' refers to the time, place, and circumstances under which an accidental injury occurs; 'arising out of the employment' refers to the origin or cause of the accidental injury." *Ramsey v. Southern Indus. Constructors Inc.,* 178 N.C. App. 25, 30, 630 S.E.2d 681, 685 (citation, quotation marks, and brackets omitted), *disc. review denied,* 361 N.C. 168, 639 S.E.2d 652 (2006).

Here, it is crucial to recall that based upon plaintiff's allegations, the incident that caused plaintiff's emotional distress was not the harassment by her supervisor, but the defendant's mishandling of her complaints regarding that harassment. Plaintiff's NIED claim alleged that "[t]he negligent actions of the Defendant . . . in the handling of Plaintiff's situation and treatment of Plaintiff as alleged herein . . . show a reckless indifference to the likelihood that said actions would cause severe emotional distress to Plaintiff[;]" "Defendant negligently failed to offer an appropriate remedy to Plaintiff and wrongfully terminated Plaintiff[;] and "Defendant knew, or reasonably should have known, that its behavior would cause emotional distress to Plaintiff." Accordingly, plaintiff's NIED claim caused by defendant's mishandling of her complaint would fall within the purview of the Industrial Commission as her emotional distress is an "injury" recognized by the Workers Compensation Act. *See* N.C. Gen. Stat. § 97-2(6); *Jordan,* 124 N.C. App. at 118-19, 476 S.E.2d at 414. Plaintiff's "injury was caused by an *accident*" as defendant's mishandling of her complaint was "an unlooked for and untoward event which is not expected or designed by the injured employee[.]" *Woodson,* 329 N.C. at 348, 407 S.E.2d at 233; *Wake County Hosp. Sys.,* 127 N.C. App. at 38, 487 S.E.2d at 792 (emphasis added). Plaintiff's "injury arose out of the employment" in that complaining to an employer about harassment at work and the risk that the employer may not handle it properly "is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment." *Mintz,* ___ N.C. App. at ___, ___ S.E.2d at ___. Plaintiff's "injury was sustained in the course of employment" in that the mishandling of her complaints occurred while plaintiff was working for defendant. *Wake County Hosp. Sys.,* 127 N.C. App. at 38-39, 487 S.E.2d at 792; *see Ramsey,* 178 N.C. App. at 30, 630 S.E.2d at 685.

**SHAW v. GOODYEAR TIRE & RUBBER CO.**

[225 N.C. App. 90 (2013)]

## G. Summary

We again stress that this case is unique. Plaintiff's NIED claim regarding the mishandling of her harassment complaints was valid, and her injuries were very real, yet she could not obtain relief from a jury because this case came to us not as claims for an intentional tort, gender or racial discrimination or wrongful termination, but solely as a NIED claim, an obviously negligence-based claim. Accordingly, although the issue on appeal only concerns plaintiff's NIED claim, plaintiff's other claims were not covered by the Workers' Compensation Act, particularly those involving intentional conduct; thus, it was proper for plaintiff to file all of her claims, except her claim for NIED, before the trial court *or* as in *Woodson*, plaintiff could have filed a claim before the Industrial Commission and requested that such claim be stayed until it had been determined which claims, if any, would be within the jurisdiction of the trial court. *See generally Woodson*, 329 N.C. 330, 407 S.E.2d 222.

As plaintiff's NIED claim was based upon the willful and wanton negligence of defendant, and as such conduct on the part of defendant falls within the purview of the Worker's Compensation Act but is not enough to sustain a *Woodson* claim and thereby qualify as an exception to the exclusivity provisions of the Workers' Compensation Act, the judgment awarding plaintiff $450,000.00 must be vacated as the trial court was without jurisdiction to enter such a judgment.

## III. Conclusion

For the foregoing reasons, we vacate the judgment awarding plaintiff $450,000.00. As we are vacating the judgment awarding plaintiff $450,000.00 we need not address defendant's other issues on appeal.

VACATED.

Judges HUNTER, JR., Robert N. and BEASLEY concur.

Judge Beasley concurred prior to 18 December 2012.